JULIE PRAZNIK, Adm'r of the Estates of Donald A. Dobbs and Antoinette E. Dobbs, Deceased, Plaintiff-Appellee, *v.* SPORT AERO, INC., *et al.*, Defendants-Appellants.

First District (2nd Division)    No. 61784

Opinion filed September 21, 1976.

Thomas W. Conklin and Franklin A. Nachman, both of Chicago (Conklin, Leahy & Eisenberg, of counsel), for appellants.

Louis G. Davidson & Assoc., Ltd., and Jon Beerman, both of Chicago (Louis G. Davidson and Robert B. Patterson, of counsel), for appellee.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Julie Praznik (plaintiff), administrator of the estates of Donald A. Dobbs and Antoinette E. Dobbs (decedents), brought an action against Sport Aero, Inc. (Sport Aero), and Edgar Fey, Jr., administrator of the estate of Ronald J. Fey (defendants), seeking damages for the wrongful deaths of decedents. Defendant Fey raised the affirmative defense that plaintiff failed to commence suit within the two-year period provided in the wrongful death statute, and both defendants affirmatively pleaded the Illinois aircraft guest act (guest act) (Ill. Rev. Stat. 1969, ch. 15½, par. 22.83) in their defense. The circuit court struck these defenses and entered orders certifying these interlocutory orders for review, pursuant to Supreme Court Rule 308 (Ill. Rev. Stat. 1969, ch. 110A, par. 308). We allowed leave to appeal.[1] This appeal involves three basic issues:

(1) did the circuit court err in striking defendant Fey's affirmative defense which alleged plaintiff's failure to commence her action against Fey within the two years provided in the wrongful death act;[2]

(2) did the circuit court err in striking defendants' affirmative defense alleging that decedents were guests, thus requiring that plaintiff prove wilful and wanton misconduct so as to hold defendants liable pursuant to the guest act; and

(3) does the Federal law regulating air traffic preempt the guest act.

On March 23, 1969, decedents and Mr. and Mrs. Ronald J. Fey departed by aircraft for the Bahama Islands. They traveled in an aircraft owned by Sport Aero, a nonprofit flying club of which Ronald J. Fey was a member. The aircraft had allegedly been leased to Fey, and in the amended complaint plaintiff alleged that decedents were passengers, not guests on that aircraft. Neither the Dobbses nor Feys returned on March 29, 1969, as expected. This was the first indication that something might have happened to decedents, the Feys, and to the aircraft on which they were traveling. The last known radio communication with the aircraft was on March 23, 1969, at approximately 2203 EST, with the Crossville Tennessee Flight Service Station. It was not until November of 1971—about two years and eight months after the alleged accident occurred[3]—

---

[1] On May 20, 1975 (No. 47534), the Illinois Supreme Court denied leave to appeal to that court under Supreme Court Rule 302(b) (Ill. Rev. Stat. 1973, ch. 110A, par. 302(b)).

[2] In response to Count III and in an amended affirmative defense to Counts I and II, defendant Sport Aero included plaintiff's failure to file its action against defendant Fey within the two-year period of limitations. However, since this defense applies only to defendant Fey, we will consider it as if it had only been raised by that defendant. Resolution of this issue applies to both defendants.

[3] The date of the discovery of the wreckage of the Sport Aero aircraft does not appear in the pleadings, but it is clear in the arguments and briefs of the parties that the wreckage was not discovered until November of 1971.

that the actual wreckage of the aircraft was discovered. The Dobbs couple left surviving minor children.

On March 29, 1971, plaintiff filed a complaint against Sport Aero, the owner of the plane, alleging that decedents had been missing since March 23, 1969, when they left for the Bahama Islands in an aircraft owned by Sport Aero and leased to Fey; that decedents were presumed to have died as a result of the crash of the Sport Aero aircraft; and that Sport Aero was liable for this crash on the theory of res ipsa loquitur, stating that the crash would not have occurred in the absence of negligence if defendants had exercised reasonable care in the maintenance and operation of the aircraft. Sport Aero denied liability and alleged no knowledge of decedents' deaths or of the alleged crash.

On May 5, 1972, about six months after the discovery of the crash, plaintiff filed an amended complaint against Sport Aero and Edgar Fey, Jr., administrator of the estate of Ronald J. Fey. Count I of the amended complaint held defendants liable on a theory of res ipsa loquitur; and Count II alleged that Ronald Fey was the agent of Sport Aero and alleged specific acts of negligence on the part of each defendant. Count III, filed over a year later, alleged that Ronald Fey was the agent of Sport Aero, the latter being negligent in allowing Fey to take control of the aircraft, and alleged the negligence of Fey as the causal factor of the crash.

Defendants responded to the amended complaint denying liability and pleading the following affirmative defenses: (1) plaintiff did not commence her action against defendant Fey within the two years provided in the Illinois wrongful death statute (Ill. Rev. Stat. 1969, ch. 70, par. 2) and the one-year statute in Tennessee (T.C.A. §28—304); and (2) that plaintiff's decedents were guests in the subject aircraft, and there can be no recovery against defendants unless it is proved defendants were guilty of wilful and wanton misconduct as required by the Illinois guest act.

Plaintiff moved to strike each of these defenses. The first defense, pleading the failure to commence suit within two years was stricken by the Honorable Ben Schwartz, who also certified that there is a substantial ground for a difference of opinion and that an immediate appeal would materially advance the ultimate termination of litigation. The second defense, pleading the guest act, was stricken by the Honorable Nicholas J. Bua, by an order holding, "* * * the act is unconstitutional in violation of plaintiff's rights to due process and equal protection of the laws granted by the Fourteenth Amendment to the United States Constitution, Article I, §12, of the Illinois Constitution of 1970, and Article IV, §22 of the Illinois Constitution of 1870."[4] The act was also found to be in violation of the

---

[4] The order miscited the due process provisions of the 1970 and 1870 Illinois constitutions. The proper citations are article I, section 2, of the Illinois Constitution of 1970, and article II, section 2, of the Illinois Constitution of 1870.

supremacy and commerce clauses of the United States Constitution (U.S. Const., art. VI, cl. 2; U.S. Const., art. 1, §8, cl. 3), and in conflict with the Federal Aviation Act (49 U.S.C. §13.01 *et seq.*), which preempted control over air traffic. The trial court also certified this question for review.

## I.

In his defense, defendant Fey objected to the timeliness of plaintiff's action. Plaintiff commenced her suit against Fey more than three years after her decedents' deaths. Defendant alleged the failure to commence suit under the Illinois wrongful death act—two years—and the Tennessee wrongful death act—one year. The circuit court struck this defense on plaintiff's motion without indicating which wrongful death act it considered to be controlling.[5] The Illinois wrongful death act (Ill. Rev. Stat. 1969, ch. 70, par. 2), in pertinent part, provides:

> "Every such action [wrongful death] shall be brought by and in the names of the personal representatives of such deceased person, and, except as otherwise hereinafter provided, the amount recovered in every such action shall be for the exclusive benefit of the surviving spouse and the next of kin of such deceased person * * *.
>
> *     *     *
>
> Every such action shall be commenced within 2 years after the death of such person. * * *."

Plaintiff moved to strike the defense urging: (1) her cause of action did not accrue until the discovery of the aircraft wreckage pointing to the fact of, and circumstances surrounding, decedents' deaths; (2) her action was timely filed pursuant to section 46(4) of the Civil Practice Act (Ill. Rev. Stat. 1969, ch. 110, par. 46(4)),[6] because Fey was an agent of Sport Aero and suit had been timely filed against Sport Aero; and (3) Illinois should accept a cause of action for wrongful death as a matter of common law, thereby tolling the period of limitations for minor children of decedents.

The circuit court allowed plaintiff's motion without specifying the ground for its rulings. In our review of the matter it is necessary to consider only plaintiff's contention that the "discovery rule" should be applied in this case.

---

[5] The question of whether Illinois or Tennessee law applies, so far as we can determine, was not presented to or ruled upon by the trial court. It has not been raised in this court. Accordingly, we shall not discuss the question.

[6] Section 46(4), so far as pertinent, reads:

"(4) A cause of action against a person not originally named a defendant is not barred by lapse of time under any statute or contract prescribing or limiting the time within which an action may be brought or right asserted, if all the following terms and conditions are met: * * * (b) failure to join the person as a defendant was inadvertent; (c) service of summons was in fact had upon the person, his agent or partner, as the nature of the defendant made appropriate, even though he was served in the wrong capacity or as agent of another, or upon a trustee who has title to but no power of management or control over real property constituting a trust of which the person is a beneficiary; * * *."

Plaintiff argues her cause of action did not accrue until November 1971, when the wreckage of the aircraft was discovered because it was at this time that plaintiff knew with any certitude of decedents' deaths and of the circumstances surrounding their deaths. Plaintiff urges the adoption of the discovery rule in this case so as to toll the running of the statutory period until she knew of her cause of action.

Defendant contends application of the discovery rule in the case at bar is error, because a wrongful death action is not a common law action, nor is it subject to our limitation act (Ill. Rev. Stat. 1969, ch. 83, par. 1 *et seq.*). Rather, a wrongful death action is a right created by statute and each condition of the statute, including the time fixed by statute for commencing the suit, must be met. See *Bishop v. Chicago Railways Co.* (1922), 303 Ill. 273, 280, 135 N.E. 439.

While a wrongful death action is a right created by statute, and the time to commence an action may not be ignored, we are not convinced that in all cases the two-year period must begin to run at the moment of death, and all cases brought after that time period are barred. In each case cited by defendant, the time and circumstances of death were known. In *Wilson v. Tromly* (1949), 404 Ill. 307, 314, 89 N.E.2d 22, our supreme court held a counterclaim for wrongful death damages was subject to the then one-year time period within which to commence an action pursuant to our wrongful death act. *Fitzpatrick v. Pitcairn* (1939), 371 Ill. 203, 210, 20 N.E.2d 280, did not question when the statutory period began to run; but rather, it held that a wrongful death complaint may not be amended to include a new party to the action after the statutory date within which to file the action had passed. While in most wrongful death cases the prescribed time requirements for conferring the right of action must be met, there are exceptions. *Kenney v. Churchill Truck Lines, Inc.* (4th Dist. 1972), 6 Ill. App. 3d 983, 992, 286 N.E.2d 619, held this statutory period was tolled during the period of military service by the Federal Soldiers' and Sailors' Civil Relief Act (50 U.S.C.A. App. §525).

Defendant argues the discovery rule should not become an exception to the time requirements of the wrongful death statute because it has only been applied under Illinois law in carefully circumscribed cases, and in none of those cases has this court purported to adopt a discovery rule of general applicability. *Gates Rubber Co. v. USM Corp.* (7th Cir. 1975), 508 F.2d 603, cited by defendant in support of this proposition, has been specifically rejected by this court in *E.J. Korvette v. Esko Roofing Co.* (1st Dist. 1976), 38 Ill. App. 3d 905, 908, 350 N.E.2d 10.

■■ The Illinois courts have recognized the applicability of the discovery rule in various situations, including statutory causes of action. (See *Rozny v. Marnul* (1969), 43 Ill. 2d 54, 70-73, 250 N.E.2d 656; *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*

(1975), 61 Ill. 2d 129, 132-36, 334 N.E.2d 160; *Esko.*) The discovery rule is now the accepted rule in Illinois and the only question remaining is its application in specific situations. Our supreme court holds that in determining if the discovery rule is appropriate in a given case, we must look at the difficulty of proof created by the passing of time as balanced against the hardship to the plaintiff who neither knows nor should have known of the existence of a right to sue. C. Scott, *For Whom the Time Tolls—Time of Discovery and the Statute of Limitations*, 64 Ill. B.J. 326, 332 (1976).

We have found no case in which a court discusses the applicability of the discovery rule in a wrongful death action similar to the case at bar. *Sellons v. Fishangri-La, Inc.* (Sup. Ct. 1955), 145 N.Y.S. 2d 588, cited by defendant, involved a wrongful death action brought after the running of the statutory period, and the fact of death—the sinking of a ship—was ascertainable by a series of events surrounding the death. In the case at bar, neither the time nor the fact of an actual crash of the aircraft on which decedents were passengers was known until November of 1971. There was no known or ascertainable cause from which decedents' deaths should have been ascertained. *Walker v. Beech Aircraft Corp.* (Fla. App. 1975), 320 So. 2d 418, held a wrongful death claim was barred by a statute of limitation where the fact of decedent's death and the circumstances surrounding that death were known since the time of death. The Florida District Court of Appeal rejected the contention that an alleged fraudulent concealment of a design error might avoid the two-year statute of limitation. But that is not the circumstance involved in the instant case.

■■ Defendant argues that, even if the discovery rule should be applied in wrongful death cases, the case at bar is not a proper case for its application. Defendant claims plaintiff knew or should have known of decedents' deaths when they did not return from their trip to the Bahama Islands as planned. In support of the contention that plaintiff had adequate actual knowledge of her cause of action, defendant cites the timely filing of suit against Sport Aero. Regardless of her knowledge of decedents' disappearance, and the filing of suit against Sport Aero, it is obvious plaintiff did not know, nor could she have known with any degree of certitude, of her right to sue until the fact of decedents' deaths and the wreckage of the Sport Aero aircraft were discovered in November of 1971. Until that time there existed a remote possibility decedents were still alive. No legal presumption of their death would arise until seven years after their disappearance. *Presbyterian Church v. St. Louis Union Trust Co.* (5th Dist. 1974), 18 Ill. App. 3d 713, 720, 310 N.E.2d 412; 16 Ill. L. & Pr. *Death* §§13, 14 (1971).

Defendant also contends that the lapse of time between decedents' deaths and the filing of suit greatly increased defendant's problem of

proof. However, no evidence of the crash or of decedents' deaths was discovered until six months prior to the time suit was filed against defendant. Until that time neither party had any access to evidence surrounding the crash, and both parties were involved in searches to discover the whereabouts of decedents and the Feys. In our opinion the passage of time did not give one party an advantage over the other.

Defendant attempts to analogize this case to *Ruffing v. Glissendorf* (1968), 41 Ill. 2d 412, 419, 243 N.E.2d 236, a probate action in which our supreme court upheld the nine-month statutory period for filing actions to contest the admission of a will to probate. Regardless of the allegation of fraudulent concealment, our supreme court held the time limitation of section 90 of the Probate Act (Ill. Rev. Stat. 1965, ch. 3, par. 90) is jurisdictional and cannot be tolled by any fact not expressly provided for by statute. We fail to understand defendant's argument in this connection. The filing of a will is a matter of public record, as are the dates the court admits the instrument as the last will of a decedent and issues letters testamentary. But that was not the situation involved in this case where there was no evidence available to prove the deaths of decedents until November of 1971.

■■ Plaintiff was diligent in commencing her cause of action upon obtaining knowledge of the accident and the deaths. There is nothing in the record to establish that defendant was prejudiced by the lapse of time between the actual date of decedents' deaths and the discovery of those deaths. In our opinion this is a proper cause for the application of the discovery rule. We affirm the circuit court's order striking defendant's affirmative defense which pleaded the two-year statute of limitations of our wrongful death act.

## II.

Both defendants affirmatively pleaded the guest act in their defense to Counts I, II, and III of plaintiff's amended complaint. That statute provides:

> "No person riding in an aircraft as a guest, without payment for the ride, nor his personal representative in the event of death of such guest, shall have a cause of action against any airman of such aircraft or its owner or his employee or agent for injury, death or loss, in case of accident, unless the accident was caused by the wilful and wanton misconduct of the airman of such aircraft or its owner or employee or agent and unless such wilful and wanton misconduct contributed to the injury, death or loss for which the action is brought." Ill. Rev. Stat. 1969, ch. 15½, par. 22.83.

Plaintiff's motion to strike this defense was granted, with the trial court finding, as discussed below, this guest act unconstitutional. We note at the

outset that a factual controversy remains as to decedents' status as guests. In the amended complaint, plaintiff alleged decedents were passengers, not guests; in response, defendants denied this allegation and affirmatively alleged decedents were guests.

■■ If decedents were not guests, the guest act would not be applicable, and plaintiff would have no standing to challenge the constitutionality of the guest act. (See 11 Ill. L. & Pr. *Constitutional Law* §§41, 63 (1955); 16 Am. Jur. 2d *Constitutional Law* §§115-123 (1964).) The trial court should have resolved the factual dispute and, if the decedents were in fact guests, then it would have been appropriate to reach the constitutional question. The constitutionality of a statute should not be considered unless such adjudication is essential to a determination of the matter before the court. (*Kelly v. Illinois Bell Telephone Co.* (7th Cir. 1963), 325 F.2d 148, 151.) Since this matter is being remanded for further consideration, we assume the issue as to decedents' guest status will be resolved on remand.

We now proceed to review the merits of the trial court's determination that our guest act is unconstitutional. Its ruling was based on two grounds: (1) the guest act violates the plaintiff's right to due process and equal protection of the laws granted by the Fourteenth Amendment of the United States Constitution and article I, section 2 of the Illinois Constitution of 1970, and article II, section 2 of the Illinois Constitution of 1870; and (2) the guest act violates the Supremacy Clause, article VI, clause 2 of the United States Constitution and the Commerce Clause, article I, section 8, clause 3 of the United States Constitution.

### A.

Plaintiff contends the Illinois guest act violates the due process and equal protection clauses of both our Federal and State constitutions because it creates an unreasonable classification for which there is no basis in reality, nor any justification at law. Plaintiff argues guests are no different than other passengers and creating a different standard of tort liability for their injuries serves no legitimate State purpose. Defendants urge the traditional justification for guest statutes—encouragement of hospitality and prevention of collusive suits. Plaintiff argues these justifications are no longer applicable under the modern conditions in the field of aviation. In effect plaintiff says the guest statute discriminates against guests by denying them the right to sue for negligently inflicted bodily injuries while affording that right to all non-guest passengers.

The soundness of the reasoning behind *automobile* guest statutes has been the subject of much litigation. (See *Sidle v. Majors* (Indiana 1976), 341 N.E.2d 763; *Sidle v. Majors* (7th Cir. 1976), 536 F.2d 1156; Annot., 66 A.L.R. 3d 532 (1975).) Our own supreme court thoroughly reviewed this

issue in connection with our automobile guest act (Ill. Rev. Stat. 1967, ch. 95½, par. 9—201) in *Delany v. Badame* (1971), 49 Ill. 2d 168, 274 N.E.2d 353. In upholding that statute the court stated:

> "[T]here is always a presumption that the General Assembly acted conscientiously, that the court will not interfere with its judgment unless classification is clearly unreasonable and palpably arbitrary, and that all reasonable doubts are to be resolved in favor of upholding the validity of a statute." (49 Ill. 2d 168, 171.)

*Delany* specifically held:

> "[C]hallenges to the guest statute are for the legislature and not the courts." (49 Ill. 2d 168, 175.)

We agree with *Delany* that the present day validity of the guest statutes should be determined by the legislature, not the court. The legislature is the body to determine whether social and economic conditions have changed to such an extent that they render guest statutes no longer useful or desirable. (See *Stoehr v. Whipple* (D. Neb. 1976), 405 F. Supp. 1249, 1252; *Sidle*.) The reasoning applicable to automobile guest statutes is equally applicable to aircraft guest statutes, although there is eminent authority in the field of aviation law which contends that decisions upholding automobile guest statutes should not be controlling. J. Kennelly, *Aviation Law: Domestic Air Travel—A Brief Diagnosis and Prognosis*, 56 Chicago Bar Record No. 5, at 248, 264 (1975).

■■ The Illinois Supreme Court has not as yet ruled on the validity of the aviation guest statute. In our opinion the guest act is a valid exercise of the legislative power bearing a rational relationship to a legitimate State interest in encouraging hospitality and preventing collusive injury suits. (See *McEntire v. Estate of Forte* (Tex. Civ. App. 1971), 463 S.W.2d 491; contra, *Thompson v. Hagan* (1974), 96 Idaho 19, 523 P.2d 1365; *Ayer v. Boyle* (1974), 37 Cal. App. 3d 822, 112 Cal. Rptr. 636.) The alleged distinction between the basis for automobile and aviation guest statutes is a matter which should be resolved by the legislature, not the courts.

## B.

■■ Plaintiff contends the guest act violates the supremacy and commerce clauses of the United States Constitution, because Congress has clearly manifested an intent to preempt all legislation in the field of aviation. Plaintiff urges that our guest act conflicts with the Federal regulation providing:

> "No person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another." (14 C.F.R. §91.9.)

Congress, by the Federal Aviation Act of 1958, Public Laws 85-726, August 23, 1958 (Act), 49 U.S.C. §1301 *et seq.*, has taken upon itself the

promotion of safety in air commerce (49 U.S.C. §1302); has provided specific safety regulations to promote this safety (49 U.S.C. §§1421-32); and has indicated certain penalties for violation of these regulations (49 U.S.C. §§1471-74).

Section 1108 of the Act (49 U.S.C. §1508(a)) provides:

> "The United States of America is declared to possess and exercise complete and exclusive national sovereignty in the airspace of the United States * * *."

Plaintiff cites this provision in support of her position that the Federal Government has manifested an intent to preempt all legislation in the field of aviation. However, the validity of a claim of preemption cannot be judged by reference to a broad statement about the comprehensive nature of Federal regulations under a particular act of Congress. (*Head v. New Mexico Board of Examiners in Optometry* (1963), 374 U.S. 424, 429, 10 L. Ed. 2d 983, 83 S. Ct. 1759.) As said in *California v. Zook* (1949), 336 U.S. 725, 731, 93 L. Ed. 1005, 69 S. Ct. 841, "Statements concerning the 'exclusive jurisdiction' of Congress beg the only controversial question: whether Congress intended to make its jurisdiction exclusive." Unless an intent to preempt is clearly manifested by the entire Act, it will not be presumed that a Federal statute was intended to supercede the exercise of the power of the State. See *New York State Department of Social Services v. Dublino* (1973), 413 U.S. 405, 413, 37 L. Ed. 2d 688, 93 S. Ct. 2507.

The Act provides for the withholding, suspension, modification, or revocation of certificates in the regulation of airspace navigation. (49 U.S.C. §§1421-30.) There are no provisions in the Act dealing with tort liability for injuries resulting from violations of federal regulations. In *McEntire v. Estate of Forte* (Tex. Civ. App. 1971), 463 S.W.2d 491, 494, the New Mexico aviation guest statute was held to be constitutional. *McEntire* ruled that the Federal Government had not exhibited any intent to preempt the traditional function of State law with respect to tort liability. On the contrary, it was noted the Act specifically provides:

> "Nothing contained in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." 49 U.S.C. §1506.

While plaintiff cites several cases which mention a Federal intent to govern all matters dealing with the use of our airspace, none of them deal with the issue presented to this court. *County of Cook v. Priester* (1st Dist. 1974), 22 Ill. App. 3d 964, 318 N.E.2d 327, involved zoning restrictions and airport runway lengths; and our supreme court's affirmance of that decision (62 Ill. 2d 357, 342 N.E.2d 41) never reached the supremacy issue

discussed in the lower court's disposition of the matter.[7] In *Village of Bensenville v. City of Chicago* (1st Dist. 1973), 16 Ill. App. 3d 733, 306 N.E.2d 562, this court held that the local regulation of aircraft noise and air pollution was preempted by the Act. *Blevens v. Sfetku* (1968), 259 Cal. App. 2d 527, 66 Cal. Rptr, 486, involved a maritime tort on a navigable interstate river which is specifically subject to Federal admiralty law under article 3, section 2 of the United States Constitution. There is no such provision for aviation litigation. *Kohr v. Allegheny Airlines, Inc.* (7th Cir. 1974), 504 F.2d 400, *cert. denied*, 421 U.S. 978, *In re Paris Air Crash of March 3, 1974* (C.D. Cal. 1975), 399 F. Supp. 732, *Gabel v. Hughes Air Corp.* (C.D. Cal. 1972), 350 F. Supp. 612, all concerned cases brought in Federal court which involved strong Federal interests. *In re Paris* involved a plane crash which took place in Paris injuring citizens of many countries, and the defect causing the crash was of a type which the Federal Aviation Administration sought to prevent. *Kohr* applied Federal rules of contribution and indemnity to a case which involved a mid-air collision of a commercial airliner and private aircraft injuring residents of several States and involving a claim against the Federal Government under the Federal Torts Claims Act. *Kohr* was also being supervised under the Federal Multidistrict Litigation Act. *Gabel* concerned a collision of a private passenger plane and a military jet. The case at bar, brought before our State court, involved the deaths of Illinois residents which resulted from the allegedly negligent operation of an Illinois aircraft during a plane trip which originated from Frankfort, Illinois. The Federal interest in this case is slight compared to the Illinois interest in governing the tort claims of its residents.

■■ *Polansky v. Trans World Airlines* (3rd Cir. 1975), 523 F.2d 332, specifically stated the Act did not create a private remedy for a suit alleging discrimination where State remedies were not necessarily inadequate. The court stated:

"Where little reason for implying a federal remedy can be articulated, federal courts should be wary of bringing entirely new areas of conduct under federal control. In the instant case, we see no greater interest for the development of a federal contract law for regulated air carriers than earlier courts have seen for the development of a federal tort law for regulated air carriers." (523 F.2d 332, 337.)

We note plaintiff has cited *Rauch v. United Instruments, Inc.* (E.D. Pa.

---

[7] On the other hand, this court in *La Salle National Bank v. County of Cook* (1st Dist. 1975), 34 Ill. App. 3d 264, 275, 340, N.E.2d 79, held that the Act did not preempt the Cook County zoning ordinance so far as the latter regulated the height of buildings near the Glenview Naval Air Station.

1975), 405 F. Supp. 435, which held a private right of action does exist for a violation of the safety regulations of the Federal Aviation Administration regardless of the availability of State remedies. On rehearing of *Rauch* (405 F.Supp. 442), the district court distinguished that case from *Polansky* on the basis there was no reason for implying a Federal remedy in *Rauch* in order to carry out a specific statutory purpose of the Act; and there was no such purpose to be accomplished in *Polansky*. *Rauch* involved a specific safety regulation violation where "the primary statutory purpose of, and national interest in, maximization of safety in air industry justifies the implication of a federal remedy here despite the apparent availability of adequate state remedies." (405 F. Supp. 435, 447.) The court in the rehearing on *Rauch* noted there was a question of law regarding the availability of a Federal remedy where State remedies existed and certified this question for an interlocutory appeal. However, we have not discovered, nor have we been cited to, a review of that question. Therefore, we rely on the reasoning in *Polansky*, denying access to Federal remedies where State remedies are adequate, and we hold our State tort law is not preempted by the Act.

Even if the Federal act preempted the field of aviation, our guest act is not necessarily in conflict with the Federal regulation providing: "No person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another." (14 C.F.R. §91.9.) As pointed out in *McEntire*, 463 S.W.2d 491, 495, the guest statute, unlike the Federal regulation, does not purport to define the standard of care required of the operator of the aircraft, and clearly does not purport to authorize the operation of the aircraft in a negligent manner, but only defines the circumstances under which a guest has a right to recover damages. When circumstances permit, there are several options available to the Federal Government to enforce its regulation against an erring pilot—*e.g.*, license revocation, suspension, or fine.

In our opinion we do not think Congress clearly manifested an intent to preempt the right of the State to regulate in this particular area. We conclude the Act was not intended to supersede the exercise of the power of the State of Illinois to adopt a guest act in the field of aviation. In our opinion the Illinois guest act does not violate either the due process or equal protection clauses of our Federal or State constitutions, nor does it violate the supremacy or commerce clauses of the United States Constitution. The circuit court erred in ruling this guest act unconstitutional and striking defendants' affirmative defenses which pleaded this guest act.

In summary the order of the circuit court of Cook County (a) striking defendant Fey's affirmative defense that plaintiff failed to commence the action within two years under our wrongful death statute is affirmed; and

(b) striking both defendants' affirmative defense pleading our guest act is reversed; and the matter is remanded for further proceedings consistent with the views expressed herein.

Affirmed in part; reversed in part; and remanded with directions.

STAMOS, P. J., and HAYES, J., concur.