DANIEL GLICK, Plaintiff-Appellant, *v.* MAURICE SABIN *et al.*, Indiv. and d/b/a Sabin, Bell & Company, Defendants-Appellees.

First District (2nd Division)    No. 62071

Opinion filed September 27, 1977.

Mel Cahan, of Chicago (Lurie & Cahan, Ltd., of counsel), for appellant.

Gerald D. Mindell, of Chicago (Isham, Lincoln & Beale, of counsel), for appellees.

Mr. PRESIDING JUSTICE DOWNING delivered the opinion of the court:

Plaintiff, Daniel Glick, appeals from an order of the circuit court which granted defendants' motion to dismiss or strike his second amended complaint. Three issues are presented for our consideration: whether plaintiff's claim is barred by the statute of limitations; whether the complaint was legally insufficient; and whether plaintiff's second amended complaint states a cause of action against defendants.

Plaintiff's second amended complaint, filed on December 31, 1974, alleged in substance that plaintiff, at all relevant times, was an investor, substantial equity owner, and (until 1966) a director of Trans-World Mutual Casualty Company and Ventura Insurance Agency, Inc. (the companies). Defendants are certified public accountants retained by the companies in 1963 to provide accounting and bookkeeping services. Between 1963 and 1967, defendants performed various services for the companies: designed and supervised a system of accounts; prepared quarterly balance sheets, annual reports as required by the Illinois Department of Insurance, and income tax returns; represented the companies during audits by the Illinois Department of Insurance; attended meetings of the companies' respective boards of directors in an advisory capacity; and generally acted in an advisory capacity.

During this period, plaintiff alleged that Paul S. Stern, an investor, director, and chief executive officer of both companies, misappropriated to his own use over $800,000 of the companies' assets. In November of 1967, the circuit court ordered the director of the Illinois Department of Insurance to liquidate the companies.

Plaintiff alleged that he first became aware of Stern's defalcations at the time the liquidation was ordered and that Stern accomplished his misappropriations through the clever manipulation of the companies' books of account, which made it impossible for him or anyone other than a trained accountant to discover them. Plaintiff alleged that he relied on highly optimistic financial information supplied him by Stern, by defendants, and by Wayne Williams, vice president of Trans-World, and was thus lulled into a false sense of security.[1]

Plaintiff further alleged that defendants knew, or should have known, of Stern's defalcations, that they breached duties of "inquiry" and "disclosure," and are guilty with Stern as aiders and abettors. In support of these allegations, the second amended complaint stated that in spite of

[1] Plaintiff states that Williams was familiar only with the operations of the companies,. inferring that Williams also was unaware of Stern's defalcations. Williams has not been named as a defendant in this action.

the information to which defendants, in their role as the corporate accountants, were privy, defendants designed an inadequate system of financial safeguards, failed to conduct adequate financial reviews, and failed to recommend appropriate changes in the companies' system of accounts. As a proximate result of this conduct, plaintiff alleged damages in excess of $3 million.

Defendants moved to dismiss, or in the alternative, to strike plaintiff's second amended complaint on four grounds: (1) its failure to set forth sufficient facts to sustain a cause of action for fraud; (2) its failure to allege facts sufficient to show a cause of action; (3) the action was barred by the statute of limitations; and (4) plaintiff's own conduct in failing to make inquiries into the financial health of the companies, when as a director he had a duty to do so, was a bar to the action. On April 9, 1975, the trial court granted defendants' motion. The order did not make any specific findings of fact, nor did it indicate the specific grounds on which it was based.

Plaintiff's original complaint in this action had been filed on June 28, 1972. In addition to what he ultimately alleged in his second amended complaint, the original complaint alleged that on a number of occasions, plaintiff had attempted to "obtain information regarding the financial affairs of both companies and more particularly the activities of Paul S. Stern," from various employees and partners of the defendants. The original complaint was stricken, on motion of the defendants, on November 14, 1972. Plaintiff was given leave to file an amended complaint.

Plaintiff's amended complaint was filed on December 12, 1972, and made basically the same allegations. Paragraph 8 of this complaint alleged that plaintiff had made a number of attempts to obtain information from defendants, "including but not limited to information regarding certain transactions involving Paul S. Stern and said companies." Both the original and amended complaints alleged that plaintiff was unaware of Stern's defalcations until November of 1967.

Defendants again moved to dismiss and strike the amended complaint. The disposition of this motion is not immediately evident from the record. However, a subsequent motion to strike, granted by the trial court on April 17, 1974, alleged that the previous motion to strike and dismiss had been denied, without prejudice, and that plaintiff had been ordered to furnish a bill of particulars by June 22, 1973. This latter motion related that plaintiff had failed to do so, and again sought a dismissal of the action.

Plaintiff then moved to vacate the dismissal order of April 17, 1974, and requested leave to file its bill of particulars *instanter*. The trial court granted this motion on May 17, 1974. Among other things, the bill of

particulars related that in February of 1964, plaintiff telephoned defendant Bell to make various inquiries regarding the December 31, 1963, quarterly statement which had been routinely distributed to the directors. Bell suggested that plaintiff submit his questions in a letter and promised to provide answers. Plaintiff wrote such a letter on February 19, 1964, asking 17 specific questions on a broad range of topics. Plaintiff alleged that defendants never answered his letter, and ignored subsequent telephone calls on February 27, 1964, March 21, 1964, April 22, 1964, and on numerous occasions thereafter. After June 30, 1965, defendants ceased to supply plaintiff with copies of quarterly interim audits. Plaintiff suggested this was defendants' response to his detailed inquires for financial information in the past. In the concluding paragraphs of the bill of particulars, plaintiff stated:

"It is submitted that if the defendants had supplied to the plaintiff the information that he requested on so many occasions and in particular requested in his letter of February 19, 1964, that he, the plaintiff, would have discovered the defalcations and other irregularities committed by Mr. Stern and would have been able to prevent the liquidation of Trans-World Mutual Casualty Company and the losses sustained by Ventura Insurance Agency, Inc."

Defendants moved to strike the bill of particulars and to dismiss the amended complaint, arguing that the bill failed to allege sufficient additional facts to establish a cause of action; that the amended complaint and bill of particulars, which sounded in fraud, did not demonstrate any fraud by defendants; and, that the action was barred by the statute of limitations. Plaintiff responded to this motion, insisting that he was unaware of the existence of a cause of action until November of 1967. Before the court entered a ruling on the motion, however, counsel for the plaintiff withdrew from the case. Leave was given to file the second amended complaint.

## I.

■■ The order of the circuit court dismissing plaintiff's second amended complaint stated neither specific findings of fact nor the specific grounds upon which the court based its ruling. However, the order may be sustained on any basis found in the record, regardless of what led the trial court to its conclusion. (*Bauscher v. City of Freeport* (2d Dist. 1968), 103 Ill. App. 2d 372, 375, 243 N.E.2d 650; see also *Mound City Warehouse Co. v. Illinois Central R.R. Co.* (5th Dist. 1964), 51 Ill. App. 2d 103, 107, 200 N.E.2d 919, and *Morse v. Nelson* (5th Dist. 1977), 48 Ill. App. 3d 895, 363 N.E.2d 167, 169.) We believe that the order of dismissal should be affirmed because the record in this case fairly supports the conclusion that plaintiff's claim is barred by the statute of limitations.

■■ The parties agree, and we concur, that the applicable limitations period for this type of action is five years under section 15 of the Limitations Act (Ill. Rev. Stat. 1971, ch. 83, par. 16). Under this statute, a plaintiff must file suit within five years after the date on which the cause of action accrues. In Illinois a cause of action accrues at the time the plaintiff knows or should know of the existence of his right of action. *Praznik v. Sport Aero, Inc.* (1st Dist. 1976), 42 Ill. App. 3d 330, 336, 355 N.E.2d 686; *Rozny v. Marnul* (1969), 43 Ill. 2d 54, 70-73, 250 N.E.2d 656; *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.* (1975), 61 Ill. 2d 129, 132-36, 334 N.E.2d 160.

Plaintiff's second amended complaint alleged that plaintiff neither knew nor could have known of Stern's defalcations until November of 1967, when the circuit court ordered the director of the Illinois Department of Insurance to liquidate the companies. Plaintiff's original complaint (filed on June 28, 1972) was filed within that period. However, in view of the other information disclosed in plaintiff's earlier pleadings,[2] these allegations are implausible. Paragraphs 8 through 12 of plaintiff's amended complaint alleged that on a number of occasions after defendants were retained by the companies, he requested from them: "certain information regarding the finances of said companies, including, but not limited to information regarding certain transactions involving PAUL S. STERN and said companies." The bill of particulars relates in detail one such attempt to secure financial information in February of 1964: plaintiff's initial telephone conversation with defendant Bell, the February 19, 1964, letter, failure of defendants to respond, and their failure to answer his numerous telephone calls. Defendants allegedly failed to supply the requested information—information plaintiff contended would have brought Stern's conduct to light. Plaintiff also alleged that after June 30, 1965, defendants ceased to supply him with quarterly interim audit reports.

■■ Plaintiff's allegations of his persistent efforts to secure financial information relating to Stern in early 1964, defendants' failure to respond, and their failure to supply quarterly financial reports to plaintiff, a corporate director and investor, after 1965 clearly indicate that plaintiff knew, or should have known, of the possible existence of a cause of action as early as February of 1964. And, while plaintiff has not alleged the precise reasons for his resignation as a director in 1966, such conduct is not inconsistent with that of a man aware that something was seriously wrong with the companies' finances. In addition, the Illinois Department of Insurance could not have sought the liquidation of the companies without

---

[2] Under section 45(3) of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 45(3)), upon motions based on defects in pleadings, substantial defects in prior pleadings may be considered.

having first conducted a thorough investigation. (Ill. Rev. Stat. 1967, ch. 73, par. 800.) While plaintiff may not have been aware of the precise nature of the Department of Insurance investigation, he was surely aware prior to November of 1967 that it was proceeding.

Because plaintiff knew or should have known of the possible existence of a cause of action by the time of his 1966 resignation as a director, his complaint, filed in June of 1972, was beyond the five year period of limitations. His action is, therefore, barred.

## II.

Because we have concluded that the plaintiff's claim is barred by the statute of limitations, there is no need for any comment on the other issues raised by the plaintiff.

Accordingly, the order of the circuit court of Cook County granting defendants' motion to dismiss or, in the alternative, to strike plaintiff's second amended complaint is affirmed.

Affirmed.

STAMOS and PERLIN, JJ., concur.