2011 UT App 352

**Analisa BOWEN (Palmer),**
**Plaintiff and Appellee,**

v.

**Tonna Lee BOWEN, Defendant**
**and Appellant.**

**No. 20100913–CA.**

Court of Appeals of Utah.

Oct. 14, 2011.

Tonna Lee Bowen, San Clemente, California, Appellant Pro Se.

Nolan J. Olsen and Matthew N. Olsen, Midvale, for Appellee.

Before Judges DAVIS, VOROS, and CHRISTIANSEN.

## MEMORANDUM DECISION

DAVIS, Presiding Judge:

¶1 Tonna Lee Bowen appeals the trial court's denial of her motion for summary judgment and grant of Analisa Palmer's (formerly known as Analisa Bowen) motion for summary judgment. We affirm.

¶2 In its ruling, the trial court determined that the statute of limitations did not bar Analisa's claim in light of the equitable discovery rule; that Bruce J. Bowen's 2001 amendment to the Bruce J. Bowen Irrevocable Trust (the Trust) removing Analisa and her brother, Cordell Bowen, as Trust beneficiaries and making Tonna the sole beneficiary and successor trustee was invalid and unenforceable; and that modification of the Trust as a matter of law was not warranted. The court also ordered that Analisa be appointed successor trustee of the Trust and that a judgment be entered against Tonna for $186,655.49, two-thirds of the money Tonna took from the Trust between 2002 and 2006, which should have been distributed equally to Analisa and Cordell.

¶3 In challenging the trial court's application of the discovery rule to toll the statute of limitations, Tonna argues that the notice accompanying the May 15, 1996 Order for Appointment of Successor Trustee and

Alternate Successor Trustee (the 1996 Order), which appointed Bruce as trustee of the Trust and amended the list of alternate successor trustees, put Analisa on constructive notice that the Trust existed. Tonna argues that because Analisa had constructive notice that the Trust existed, she also had constructive notice of the provisions of the Trust.

■ ¶ 4 The applicability of a statute of limitations and the discovery rule are questions of law, which we review for correctness. *See Colosimo v. Roman Catholic Bishop of Salt Lake City*, 2004 UT App 436, ¶ 8, 104 P.3d 646, *aff'd*, 2007 UT 25, 156 P.3d 806. "[T]he applicability of the statute of limitations and the discovery rule also involves a subsidiary factual determination—the point at which a person reasonably should know that he or she has suffered a legal injury." *Spears v. Warr*, 2002 UT 24, ¶ 32, 44 P.3d 742, *overruled on other grounds by Tangren Family Trust v. Tangren*, 2008 UT 20, ¶ 16, 182 P.3d 326. We review this subsidiary factual determination under a clearly erroneous standard. *See id.*

■ ¶ 5 A four-year statute of limitations applies to this trust action.[1] *See Snow v. Rudd*, 2000 UT 20, ¶¶ 9, 16, 998 P.2d 262 (applying the four-year catch-all statute of limitations contained in Utah Code section 78B–2–307(3) to a trust dispute). The discovery rule operates to toll a statute of limitations "until the discovery of facts forming the basis for the cause of action." *Myers v. McDonald*, 635 P.2d 84, 86 (Utah 1981). "We apply the discovery rule only when required by statute, when a defendant has affirmatively concealed a plaintiff's cause of action, or when exceptional circumstances exist." *Snow*, 2000 UT 20, ¶ 10, 998 P.2d 262.

■ ¶ 6 Although the parties concentrate on the concealment branch of the discovery rule, we focus our analysis on the exceptional circumstances branch because that is the branch relied upon by the trial court. This branch of the discovery rule first requires

claimants to demonstrate that they "did not know and could not reasonably have discovered the facts underlying the cause of action in time to commence an action within that period." *Walker Drug Co. v. La Sal Oil Co.*, 902 P.2d 1229, 1231 (Utah 1995). Next, the court must "apply a balancing test to weigh the hardship imposed on the claimant by the application of the statute of limitations against any prejudice to the defendant resulting from the passage of time." *Snow*, 2000 UT 20, ¶ 11, 998 P.2d 262 (internal quotation marks omitted); *see also Praznik v. Sport Aero, Inc.*, 42 Ill.App.3d 330, 355 N.E.2d 686, 691 (1976) (framing the discovery rule as requiring the court to "look at the difficulty of proof created by the passing of time as balanced against the hardship to the plaintiff who neither knows nor should have known of the existence of a right to sue").

■ ¶ 7 Here, Tonna argues that the record unequivocally demonstrates that Analisa had at least constructive notice through publication that the Trust existed in May 1996. As proof of Analisa's constructive notice, Tonna relies on the 1996 Order which states, "The required notices have been given." The 1996 Order, however, also lists Analisa's address as "unknown," and Analisa's affidavit states that she did not have any knowledge of the Trust until May 26, 2006. In response, Tonna directs us to the Proof of Publication, which explains that the notice was published in three issues of two different newspapers during April 1996. Analisa, however, argues that the Proof of Publication evidence was not in the record before the trial court and that we therefore cannot consider it on appeal. *See Wilderness Bldg. Sys., Inc. v. Chapman*, 699 P.2d 766, 768 (Utah 1985) (explaining that an appellate court's "review is of course limited to the evidence contained in the record on appeal"). We agree with Analisa. Although Tonna included the Proof of Publication evidence in the addendum to her Motion for Reconsider-

---

1. The trial court held that "there is no Statute of Limitations for trust matters." We note that this broad statement is both inconsistent with the trial court's subsequent application of the discovery rule to toll the statute of limitations and incorrect in light of our determination that the catch-all statute of limitations applies to this case. *See generally* Utah Code Ann. § 78B–2–307(3) (2008) (providing a four-year limitations period "for relief not otherwise provided for by law").

ation of Summary Judgment for Plaintiff (Motion to Reconsider) and with her docketing statement for appeal, the record indicates that the trial court did not rule on this motion or otherwise consider it. Because the Utah Rules of Civil Procedure do not recognize postjudgment motions to reconsider, *see Gillett v. Price,* 2006 UT 24, ¶ 7, 135 P.3d 861, "trial courts are under no obligation to consider [them, and] any decision to address or not to address the merits of such a motion is highly discretionary," [2] *Tschaggeny v. Milbank Ins. Co.,* 2007 UT 37, ¶ 15, 163 P.3d 615. *See generally Gillett,* 2006 UT 24, ¶ 8, 135 P.3d 861 ("Hereafter, when a party seeks relief from a judgment, it must turn to the rules to determine whether relief exists, and if so, direct the court to the specific relief available. Parties can no longer leave this task to the court by filing so-called motions to reconsider and relying upon district courts to construe the motions within the rules."); *Radakovich v. Cornaby,* 2006 UT App 454, ¶¶ 5–7, 147 P.3d 1195 (explaining that *Gillett* "put an end to [the] practice" by "the appellate courts of this state ... [of] treating motions to reconsider as if they were filed under a valid procedural rule based upon the substance of the motion"). The trial court did not abuse its discretion when it declined to address Tonna's Motion to Reconsider, and because the trial court did not review the motion, the publication evidence appended to it was not a part of the record when the trial court issued its decision on summary judg-

ment. Consequently, the publication evidence is not properly before us on appeal.

¶ 8 The statute of limitations evidence properly before the trial court consisted of Analisa's affidavit and the 1996 Order indicating that notice was given and listing Analisa's address as unknown. The trial court stated,

> I'm ... not convinced that the notice given in [19]96 was appropriate constructive notice. The documents indicate[ ] there was notice. It shows that the address of the plaintiff was unknown and there is no showing in my record that there was, for instance, notice through publication which would be constructive notice, but there is no evidence before me of that.[ [3] ]

Accordingly, we do not believe the trial court's determination that Analisa lacked constructive or actual notice until May 26, 2006, was incorrect or clearly erroneous.[4]

¶ 9 Next, we consider whether the trial court correctly determined that Analisa's situation was an "exceptional circumstance," warranting application of the discovery rule to toll Analisa's claim. Without application of the discovery rule, it is likely Analisa's claim would be barred by the four-year statute of limitations because she did not file her complaint until May 25, 2007. Analisa's claim accrued in either 2001, when the amendment to the Trust was executed, or sometime after Bruce died on May 18, 2002, and Tonna acted upon the terms of the amendment.[5]

2. The trial court issued its final judgment on October 7, 2010, and Tonna's Motion to Reconsider was filed October 18, 2010. Even if Tonna's motion was filed before the final judgment was entered, the trial court is still accorded significant discretion in its decision to review the filing, *see Gillett v. Price,* 2006 UT 24, ¶ 7 n. 2, 135 P.3d 861 ("[A] motion to reconsider filed after an unsigned minute entry but before a final judgment was not a postjudgment motion, but rather a reargument that the district court was free to consider any time before entering the final judgment." (citing *Ron Shepherd Ins., Inc. v. Shields,* 882 P.2d 650, 653–54 (Utah 1994))).

3. Arguably, the trial court erred in granting summary judgment for Analisa to the extent its ruling weighed the evidence for and against a finding of constructive notice. However, because neither party addresses this matter, we do not consider it.

4. Even if the proof of publication of the 1996 Order was properly admitted into evidence, we do not believe the constructive notice it would impart would start the statute of limitations against Analisa in 1996 because Analisa's underlying claim did not arise until 2001, when Bruce enacted the 2001 Trust Amendment.

5. Analisa's claim arguably accrued as late as the date by which Tonna received the first payment of Trust profits after Bruce's death, or the date by which that payment reasonably could have been expected by a beneficiary under the Trust. While evidence of such is not in the record, we do not believe it is necessary to pinpoint the exact date Analisa's claim accrued in light of our determination that the trial court correctly applied the discovery rule to toll the statute of limitations to May 26, 2006.

¶ 10 A determination that a particular situation constitutes an "exceptional circumstance" involves weighing the equities for and against tolling the statute of limitations. *See Snow v. Rudd*, 2000 UT 20, ¶ 11, 998 P.2d 262. Although the trial court's analysis of this prong of the discovery rule test is rather sparse,[6] we nonetheless believe its finding in favor of Analisa is correct because

> when a case involves a trust, a trustee cannot take advantage of a statute of limitations defense until something has occurred to give the beneficiary a clear indication that a breach or repudiation has occurred, or, alternatively, the circumstances must be such that [the beneficiary] must be charged with knowledge of such a repudiation or breach.

*Id.* (alteration in original) (internal quotation marks omitted); *accord Walker v. Walker*, 17 Utah 2d 53, 404 P.2d 253, 257 (1965) ("[A statute of limitations] defense is not available to a trustee as against his beneficiaries until something has occurred to give a clear indication to them that he has repudiated his trust[ ] or the circumstances are such that they must be charged with knowledge of such repudiation." (footnote omitted)). "[W]here a trustee is sued by a beneficiary or [a beneficiary] claims a violation of the trust, it constitutes an 'exceptional circumstance' calling for application of the discovery rule." *Snow*, 2000 UT 20, ¶ 11, 998 P.2d 262.

¶ 11 Here, the statute of limitations would operate to bar Analisa's claim when she had no reason to suspect she was the beneficiary of a trust or that she was removed as a beneficiary by the 2001 Amendment, which was not accompanied by any notice by publication or otherwise. Tonna, on the other hand, faces few evidentiary hurdles posed by the passage of time because the evidence consists primarily of the documents associated with Bruce's estate rather than fading memories of aging witnesses. Although one purpose of statutes of limitations is to prevent the unfair litigation of stale claims, *see*

*Davis v. Provo City Corp.*, 2008 UT 59, ¶ 27, 193 P.3d 86, we believe the equities in this case weigh in favor of a determination that exceptional circumstances exist that would make "a rigid application of the statute of limitations irrational and unjust," *Snow*, 2000 UT 20, ¶ 11, 998 P.2d 262. *Compare Praznik v. Sport Aero, Inc.*, 42 Ill.App.3d 330, 355 N.E.2d 686, 691–92 (1976) (tolling the statute of limitations to the date the plane wreckage was discovered because the lapse of time did not give either party an advantage—neither party had solid evidence until the wreckage was discovered and the record did not otherwise indicate "that defendant was prejudiced by the lapse of time between the actual date of decedent[s'] deaths and the discovery of those deaths"), *Klinger v. Kightly*, 791 P.2d 868, 872 (Utah 1990) (finding the evidentiary burden and prejudice faced by the surveyor after the passage of fourteen years was outweighed by the harm to the landowners because, without tolling the statute of limitations, the landowners would otherwise be barred from bringing their claim for surveyor negligence when "[t]hey had no reason to suspect that the survey was inaccurate" and they did not "refrain from doing anything that might reasonably have been expected of them that could have disclosed the error"), *and Myers v. McDonald*, 635 P.2d 84, 86–87 (Utah 1981) (weighing the equities between the parties and finding the balance in favor of the plaintiffs where, "despite their efforts to discover his whereabouts[,] plaintiffs had no knowledge of their ward's death and therefore no knowledge that a cause of action existed until after the two-year limitations period had expired"), *with Ottens v. McNeil*, 2010 UT App 237, ¶¶ 63, 67, 239 P.3d 308 (attributing the plaintiff's failure to name an additional defendant within the limitations period to the fact that she "slept on her rights," rather than an exceptional circumstance warranting application of the discovery rule (internal quotation marks omitted)). Accordingly, we determine that the trial

---

6. The trial court stated that

   the notice given in 1996 was not constructive notice to [Analisa], in that it provided that the address of [Analisa] was unknown[;] ... [t]hat there was no notice given through publication[;] ... [t]hat the Discovery rule should apply [because Analisa] had no actual or constructive knowledge of the trust until May 26, 2006[; and] ... [t]hat the application of the general Statute of Limitation rule would be unjust.

court did not err by applying the discovery rule to toll the statute of limitations to May 26, 2006, the date Analisa admits she first learned of the Trust and that she may have a claim against Tonna as the trustee.

¶ 12 Next, Tonna argues that the trial court incorrectly determined that the 2001 Trust Amendment was invalid and unenforceable.[7] "So long as a court confines its analysis to the language of the trust instrument and does not resort to extrinsic evidence of intent, the interpretation of a trust is an issue of law." *Hoggan v. Hoggan*, 2007 UT 78, ¶ 7, 169 P.3d 750. Although the trial court recognized that Bruce's intent to disinherit Analisa and Cordell was clearly expressed in the 2001 Amendment and in Bruce's will, the trial court's determination that the amendment was invalid rested on the fact that the Trust itself outlines the manner in which the Trust can be amended. Specifically, Article IV of the Trust states,

> This Trust is intended to and shall be unamendable and irrevocable. Provided, however, that the Third Judicial District Court of Salt Lake City, State of Utah or any judge thereof may make any equitable changes necessary in order that this Trust may comply with the purposes expressed herein, but *only* upon application of the Trustee to the Court.

(Emphasis added.) The trial court believed that Article IV was controlling. We agree. "Under Utah common law, a settlor has power to modify or revoke a trust only to the extent the trust documents permit, and only in the particular manner or circumstances identified as allowable under the terms of the trust documents." *Davis v. Young*, 2008 UT App 246, ¶ 15, 190 P.3d 23. Bruce did not follow Article IV when executing the 2001 Amendment. Accordingly, the trial court correctly found "[t]hat the 2001 amendment to the trust was made in violation of the trust document and is not valid."[8]

¶ 13 Lastly, Tonna argues that the trial court erred when it refused to reform the Trust to coincide with Bruce's "expressed intent to name only one of his children beneficiary of his trust." The Utah Code permits reformation of a trust, "even if unambiguous, to conform the terms to the settlor's intention if it is proved by clear and convincing evidence that both the settlor's intent and the terms of the trust were affected by a mistake of fact or law, whether in expression or inducement." Utah Code Ann. § 75–7–415 (Supp.2011).

¶ 14 Reformation is an equitable remedy and "because of the advantaged position of the trial court, we give considerable deference to [the trial court's] findings and judgment." *Jacobson v. Jacobson*, 557 P.2d 156, 158 (Utah 1976). Generally, reformation is available on two grounds: "(1) mutual mistake of the parties and (2) ignorance or mistake of the complaining party coupled with or induced by the fraud or inequitable conduct of the other remaining parties." *Thompson v. Smith*, 620 P.2d 520, 523 (Utah 1980) (internal quotation marks omitted); *see also* Restatement (Third) of Prop.: Wills and Other Donative Transfers § 12.1 (1995).

¶ 15 Assuming without deciding that Bruce is the settlor of the Trust,[9] neither of the two

---

7. Specifically, Tonna argues that the trial court concluded that the Trust Amendment was invalid and unenforceable after misapplying *Nolan v. Hoopiiaina (In re Malualani B. Hoopiiaina Trusts)*, 2005 UT App 272, 118 P.3d 861, *aff'd as modified*, 2006 UT 53, 144 P.3d 1129. Because of the manner in which we resolve this issue, we do not need to address the import of *In re Malualani B. Hoopiiaina Trusts*.

8. To the extent Tonna intends to argue that the Doctrine of Merger should apply to the Trust, we believe the argument is unavailing. The Doctrine of Merger provides that "if the legal title to the trust property and the entire beneficial interest become united in one person who is not under an incapacity, the trust terminates," *see* Restatement (Second) of Trusts § 341(1) (1959). However, Bruce's children are explicitly named as beneficiaries in the Trust: "This trust is also for the benefit of the children of Bruce J. Bowen after his death...." Merger, therefore, is inapplicable even if Tonna is correct in identifying future beneficiaries' rights under the Trust as "entirely defeasible." *See generally* Utah Code Ann. § 75–7–103(1)(b), (b)(i) (Supp.2011) (defining "beneficiary" as "a person that ... has a present or future beneficial interest in a trust, vested or contingent").

9. The Trust was executed on February 23, 1983. Both parties conceded in the record that Bruce, "in the initial capacity as settlor, deeded" the mineral leases that are now the corpus of the

scenarios in which reformation is available exists here. Bruce knew about Article IV of the Trust and how to comply with it; the 1996 Order is evidence of that. And even if the 2001 Amendment was executed with the mistaken presumption that the Merger Doctrine applied, *see supra* ¶ 12 note 8, or upon some other erroneous view of the law or facts, there is no evidence that such a mistake was either mutual or "induced by the fraud or inequitable conduct of the other remaining parties," *see Thompson*, 620 P.2d at 523. Therefore, we affirm the trial court's refusal to reform the Trust.

¶ 16 In sum, we reject Tonna's argument that the statute of limitations bars Analisa's claim and determine that the trial court's application of the discovery rule was correct. We further determine that the trial court correctly ruled that Bruce's failure to comply with Article IV of the Trust when executing the 2001 Amendment rendered that amendment invalid. Additionally, the trial court's decision to not apply the equitable remedy of reformation was correct.

¶ 17 WE CONCUR: J. FREDERIC VOROS JR., Judge and MICHELE M. CHRISTIANSEN, Judge.

Trust to Fawn B. Coltharp "for the purpose of creating an oral trust to be administered by Fawn Coltharp for the benefit of Bruce." Likewise, the Utah Code defines "settlor" as "a person, including a testator, who creates, or contributes property to, a trust." *Id.* § 75–7–103(k). However, the record also indicates that Bruce initially transferred title of the mineral leases on January 17, 1979, nearly four years before the Trust was executed, to pay off a debt owed to Fawn. We can only assume the parties agreed that upon satisfaction of the debt, Fawn would convey the leases into a trust with terms akin to the trust that was subsequently established; whether this makes Bruce a "settlor" as a matter of law remains unclear. However, because our decision does not require us to resolve this ambiguity, we simply assume, without deciding, that Bruce is a settlor of the Trust.