**Alfred MORENO et al., Appellants,**

v.

**STERLING DRUG, INC., Appellees.**

**No. C–7744.**

Supreme Court of Texas.

March 28, 1990.

Rehearing Overruled May 9, 1990.

Les Mendelsohn, Randall C. Jackson, Jr., San Antonio, for appellants.

P. Michael Jung, Mark Donheiser, Dallas, for appellees.

## OPINION

SPEARS, Justice.

This case is before us upon certified questions from the United States Court of Appeals for the Fifth Circuit. Pursuant to TEX. CONST. art. V § 3–c, we have jurisdiction to answer the following certified questions:

1. Does the "discovery rule" apply to the Texas Statute of Limitations, TEX. CIV.PRAC. & REM.CODE § 16.003(b), in an action brought pursuant to the Texas Wrongful Death and Survival Statutes, TEX.CIV.PRAC. & REM CODE § 71.001 *et seq.* and § 71.021, respectively?

2. If the discovery rule does not apply to the Texas Statute of Limitations in wrongful death and survival actions, does that statute of limitations as applied to the plaintiffs herein, violate the open courts provision of the Constitution of the State of Texas, TEX. CONST. art. I § 13?

For the reasons stated in this opinion, we answer that the discovery rule does not apply to the wrongful death statute of limitations found in section 16.003(b), and, that section 16.003(b) as applied to the plaintiffs in this case does not violate article I, section 13 of the Texas Constitution.

For clarity, we emphasize that these issues are before us on certified questions from the Fifth Circuit. This is a very limited procedural device; we answer only the questions certified and nothing more. *See* Tex.R.App.P. 114. Thus, the whole case is not before this court as it would be in an ordinary appeal.

The essential facts of this case have been certified to this court. On January 21, 1981, Alfred Moreno, Jr., the infant son of Alfred and Emma Moreno, died of Reye's syndrome. On September 19, 1981, Shawna Rae Sloan, the infant daughter of James and Camilla Sloan, died of Reye's syndrome. In the days preceding their deaths,

the infants had been administered doses of Bayer Children's Aspirin, manufactured by Sterling Drug, Inc. Sometime after the deaths of the infants the parents were informed that in some instances the use of aspirin factored into Reye's syndrome deaths. On October 22, 1985, the parents filed separate wrongful death suits against Sterling Drug in state district court. Sterling Drug removed the actions to the United States District Court for the Western District of Texas.

Following removal, Sterling Drug moved for summary judgment in both suits, claiming that the actions were barred by the Texas Wrongful Death Statute of Limitations, TEX.CIV.PRAC. & REM.CODE ANN. § 16.003(b)(Vernon 1986). The federal district court dismissed the suits, citing the recent Fifth Circuit decision of *Tennimon v. Bell Helicopter Textron, Inc.*, 823 F.2d 68 (5th Cir.1987), wherein that court held the discovery rule does not apply to section 16.003(b). The cases were consolidated on appeal, and Moreno and Sloan (collectively "Moreno") moved for certification of the legal questions to this court. A panel of the Fifth Circuit denied the motion to certify and affirmed in an unpublished opinion on the basis of *Tennimon*. On rehearing and after en banc reconsideration of the certification question, the Fifth Circuit granted the motion to certify.

■ The first question is whether the "discovery rule" applies to the statute of limitations for actions based on injuries resulting in death. The relevant limitations statute, section 16.003, TEX.CIV.PRAC. & REM.CODE ANN., provides as follows:

(a) A person must bring suit for ... personal injury ... not later than two years after the cause of action accrued.

(b) A person must bring suit not later than two years after the day the cause of action accrues in an action for injury resulting in death. The cause of action accrues on the death of the injured person.

The only courts to construe section 16.-003(b) have found it clear and unambiguous in prescribing an absolute two-year limitation period for bringing a wrongful death

case. *Tennimon v. Bell Helicopter Textron, Inc.*, 823 F.2d 68, 73 (5th Cir.1987); *Stiles v. Union Carbide Corp.*, 520 F.Supp. 865, 867 (S.D.Tex.1981). Those decisions, along with a literal reading of section 16.-003(b), would suggest that Moreno's wrongful death action is barred because it was brought after the two-year limitations period had expired. Moreno, however, argues that the "discovery" rule should apply to section 16.003(b), because he neither knew nor could have known the cause of his injury within the two-year limitation period. Specifically, he asserts that his suit was timely brought because it was filed within two years of the discovery of the link between aspirin and Reye's syndrome.

Moreno offers a number of arguments for why this court should disregard the plain language of section 16.003(b) and apply the discovery rule to the limitations period for wrongful death actions. First, he points out that this court has applied the discovery rule in determining the limitations period under the statutory predecessor to section 16.003(a), which governs actions for personal injury *not* resulting in death. Citing *Ex parte Pruitt*, 551 S.W.2d 706, 709 (Tex.1977) for the proposition that statutes should be read as a whole and construed to give purpose and meaning to every part, Moreno argues that the underlying purpose of section 16.003 is to authorize application of the discovery rule to subparts (a) and (b). Second, Moreno contends that the second sentence of section 16.003(b) only fixes the *earliest* time the cause of action may accrue and was intended to "save" the cause of action from being barred when more than two years elapse between injury and death. *See DeHarn v. Mexican Nat'l Ry. Co.*, 86 Tex. 68, 23 S.W. 381 (1893). Moreno argues that this court should set the *latest* date of accrual beyond death (i.e. at discovery of cause of action) because the purpose of section 16.003(b) is to expand the time in which a wrongful death action can be brought. Finally, Moreno maintains that if subparts (a) and (b) are not interpreted consistently it will result in the absurdity of allowing a defendant to be exonerated for conduct which

kills but held liable for conduct which merely maims. *See Hanebuth v. Bell Helicopter International,* 694 P.2d 143, 147 (Alaska 1984). Moreno argues that this court should avoid this absurdity by construing subpart (b) to allow application of the discovery rule.

We begin our analysis by observing that the primary purpose of section 16.003, as with all limitation statutes, is to compel the exercise of a right of action within a reasonable time so that the opposing party has a fair opportunity to defend while witnesses are available. *Willis v. Maverick,* 760 S.W.2d 642, 644 (Tex.1988). Section 16.003 embodies a legislative determination of what a "reasonable time" is for bringing both an action for injuries not resulting in death (subpart a), and one for injuries resulting in death (subpart b). Under both subparts (a) and (b), an action must be brought within two years of the date the cause of action "accrues." Only subpart (b), however, goes on to specify that a cause of action "accrues" at a certain time—the date of death. When the legislature employs the term "accrues" without an accompanying definition, the courts must determine when that cause of action accrues and thus when the statute of limitations commences to run. Indeed, on three previous occasions this court has adopted and relied upon the following language from *Fernandi v. Strully,* 35 N.J. 434, 173 A.2d 277, 285 (1961):

> [T]he question when a cause of action accrues is a judicial one, and to determine it in any particular case is to establish a general rule of law for a class of cases, which rule must be founded on reason and justice.... In the absence of legislative definition and specification, the ... courts have often been called upon to delineate the statute; they have consciously sought to apply it with due regard to the underlying statutory policy of repose, without, however, permitting unnecessary individual injustices.

*Willis,* 760 S.W.2d at 644; *Robinson v. Weaver,* 550 S.W.2d 18, 20 (Tex.1977); *Gaddis v. Smith,* 417 S.W.2d 577, 580–81 (Tex.1967).

For purposes of the application of limitation statutes, a cause of action can generally be said to accrue when the wrongful act effects an injury, regardless of when the plaintiff learned of such injury. *Robinson,* 550 S.W.2d at 19. The discovery rule represents an exception to this general rule of accrual. *Id.* The discovery rule is a judicially constructed test which is used to determine when a plaintiff's cause of action accrued. *Weaver v. Witt,* 561 S.W.2d 792, 794 (Tex.1977). When applied, the rule operates to toll the running of the period of limitations until the time that the plaintiff discovers, or through the exercise of reasonable care and diligence should discover, the nature of his injury. *Id.* at 793–94. This court has applied the discovery rule to medical malpractice cases in which the plaintiff did not, and could not, know of the injury at the time it occurred. *See Gaddis v. Smith,* 417 S.W.2d 577, 580 (Tex.1967) (negligence action against physician for leaving sponge in patient's body accrues when patient learns of, or in exercise of reasonable care and diligence, should have learned of presence of sponge); *Hays v. Hall,* 488 S.W.2d 412 (Tex.1972) (action for negligent performance of vasectomy accrues when plaintiff discovers or should have discovered that he remains fertile). Similarly, this court has applied the discovery rule in a limited number of other cases when the injured party did not, and could not, know of his injury at the time it occurred. *See e.g., Bayouth v. Lion Oil Co.,* 671 S.W.2d 867 (Tex.1984); *Kelley v. Rinkle,* 532 S.W.2d 947 (Tex.1976); *Quinn v. Press,* 135 Tex. 60, 140 S.W.2d 438 (1940). In each of these cases, this court applied the discovery rule to a statute of limitations which left the phrase "accrual" undefined. By contrast, section 16.003(b) specifically defines "accrual" as the date of death. The question here is whether the discovery rule should be applied to a limitations statute which has clearly and unequivocally prescribed that a cause of action accrues upon the occurrence of a specified event. For a number of reasons, we

hold that it should not.[1]

*Plain Meaning of Section 16.003(b).*

■ Moreno's argument that the discovery rule should be applied to section 16.003(b) as a matter of statutory construction ignores the plain language of the statute. Where language in a statute is unambiguous, this court must seek the intent of the legislature as found in the plain and common meaning of the words and terms used. *RepublicBank Dallas, N.A. v. Interkal, Inc.,* 691 S.W.2d 605, 607 (Tex. 1985); *Cail v. Service Motors, Inc.,* 660 S.W.2d 814, 815 (Tex.1983). Section 16.-003(b) specifically provides that in a wrongful death action "a person must bring suit not later than two years after the day the cause of action accrues" and goes on to fix "accrual" at the injured person's death. The express language of the statute, therefore, evidences the legislative intent to fix the only date of accrual, and not merely the earliest, as Moreno contends.[2]

Moreno's reliance on our decision in *DeHarn* is also misguided. In *DeHarn,* this court interpreted the accrual language in TEX.REV.CIV.STAT. art. 3202 (1879), which was the statutory predecessor to section 16.003(b). The opinion describes the reason for Article 3202 as follows:

> Since no action could be brought by the relatives of the injured person until death had ensued, and since a great deal of time might elapse between the injury and the death, it was reasonable that the time of death should be taken as the point from which limitation should begin to run.

*DeHarn,* 23 S.W. at 381–82. Moreno construes this single passage as evidencing a legislative purpose to extend the beginning of the running of the statute beyond the date of death. But Article 3202 was meant solely to prevent the potential anomaly of limitations running *before* death. Its purpose was not to extend the beginning of the running of the statute *beyond* the date of death. Nothing in the wording of Article 3202 or our discussion in *DeHarn* indicates such a purpose. Moreover, to engraft such a purpose on to section 16.003(b) would be to ignore our oft-repeated pronouncement that the "purpose" of all limitation statutes is to compel the exercise of a right of action within a reasonable time so that the opposing party has a fair opportunity to defend while witnesses are available. *See e.g., Willis,* 760 S.W.2d at 644; *Robinson,* 550 S.W.2d at 20; *Price v. Estate of Anderson,* 522 S.W.2d 690, 692 (Tex.1975); *see also United States v. Kubrick,* 444 U.S. 111, 117, 100 S.Ct. 352, 356, 62 L.Ed.2d 259 (1979) ("[s]tatutes of limitation ... afford plaintiffs what the legislature deems a reasonable time to present their claims [and] ... protect defendants and courts from having to deal with cases in which the search for truth may be seri-

---

1. Moreno has not argued that the doctrine of fraudulent concealment operates to toll the running of limitations in this case; nor has the Fifth Circuit requested that we address this issue. The doctrine of fraudulent concealment provides that where a defendant is under a duty to make disclosure but fraudulently conceals the existence of a cause of action from the party to whom it belongs, the defendant is estopped from relying on the defense of limitations until the party learns of the right of action or should have learned thereof through the exercise of reasonable diligence. *Borderlon v. Peck,* 661 S.W.2d 907, 908 (Tex.1983). Because the question of the doctrine's applicability in the present case is not properly before us, we express no opinion on the issue.

2. A number of other states construing absolute statutes with similar or identical language to that found in section 16.003(b) have held that the clear language of the statute precluded application of the discovery rule. *See, e.g., Trimper v. Porter–Hayden,* 305 Md. 31, 501 A.2d 446, 449 (1985) (clear language of statute could not be rewritten under the "guise of statutory construction"); *Presslaff v. Robins,* 168 N.J.Super. 543, 403 A.2d 939, 941 (App.Div.1979) ("The court may not strain on policy grounds to manufacture a signification of the statutory language to achieve a result obviously not intended by the legislature and in direct conflict with the unequivocal proscription in [the statute]."); *Morano v. St. Francis Hospital,* 100 Misc.2d 621, 420 N.Y.S.2d 92, 95 (N.Y.Sup.Ct.1979) ("The language leaves no room for judicial construction and there are no statutory spaces to be filled."); *Cadieux v. International Tel. & Tel. Corp.,* 593 F.2d 142, 144 (1st Cir.1979) (applying Rhode Island law) ("date of death" cannot be construed to mean "date of discovery of the cause of death").

ously impaired by loss of evidence, memory, or disappearance of witnesses.").

### The Discovery Rule.

Notwithstanding the plain language of section 16.003(b), Moreno argues that the discovery rule should be applied to the statute because our past decisions have applied the rule to section 16.003(a) involving injuries and, in the interest of consistency, section 16.003(b) should be similarly construed. This argument, however, misconceives both the function of the discovery rule and the power of this court to craft exceptions to legislative enactments.

As we have said, the discovery rule is a judicially conceived exception to statutes of limitation to be used by courts to determine when a cause of action accrues. This court has only applied the rule to "accrual" limitation statutes—i.e. statutes which have failed to define when a cause of action accrues. Because these statutes did not specify a time of "accrual," this court did not violate a specific legislative directive when it interpreted them to allow for application of the discovery rule. Section 16.-003(b), however, prescribes an absolute limitations period by expressly specifying that "accrual" is the date of death. Since section 16.003(b) specifies death as the accrual date for wrongful death actions, there is no need for this court to employ the discovery rule—the legislature has completed the task.[3] Furthermore, when

faced with other absolute statutes of limitations in which the legislature has specifically defined the date or event which triggers accrual, this court has enforced the literal terms of the statute and refused to engraft a discovery rule. *See e.g., Safeway Stores, Inc. v. Certainteed Corp.,* 710 S.W.2d 544, 546–48 (Tex.1986); *Morrison v. Chan,* 699 S.W.2d 205, 208 (Tex.1985).

### Other Jurisdictions.

The overwhelming majority of states construing absolute statutes with similar or identical language to that found in section 16.003(b) have held that the discovery rule does not apply.[4] These courts offer several rationales for refusing to apply the discovery rule, including: (1) that the rule applies only to accrual statutes but not absolute statutes, *see, e.g., Presslaff,* 403 A.2d at 940; *White,* 693 P.2d at 692; (2) that the fact of death itself is an event which should trigger any and all relevant inquiry, *see, e.g., DeCosse,* 319 N.W.2d at 51; (3) that there is a substantial state interest in promoting the prompt settlement of the affairs of the deceased, *see, e.g., Cadieux,* 593 F.2d at 145; *Pastierik,* 526 A.2d at 323; and (4) that the clear language of the statute cannot be judicially rewritten under the "guise of statutory construction," *see, e.g., Trimper,* 501 A.2d at 449; *Morano,* 420 N.Y.S.2d at 95. In many of these decisions, the factors sug-

---

**3.** This is the exact position taken by the court in *Stiles v. Union Carbide Corp.,* 520 F.Supp. 865, 867 (S.D.Tex.1981) ("When the legislature has clearly and unequivocally prescribed that a cause of action accrues on the occurrence of a specified event," the courts have neither the necessity nor the authority to invoke the discovery rule.). A good argument can be made that the legislature has adopted this interpretation by recodifying the statute in 1985 without adding any substantive changes. *See Cunningham v. Cunningham,* 120 Tex. 491, 40 S.W.2d 46, 51 (1931) ("Nothing is better settled than that the legislature must be regarded as intending statutes, when repeatedly re-enacted, ... to be given that interpretation which has been settled by the courts.").

**4.** *See, e.g., With v. General Electric Co.,* 653 P.2d 764 (Colo.App.1982); *Farmers Bank & Trust Co. of Bardstown v. Rice,* 674 S.W.2d 510, 512 (Ky.

1984); *Trimper v. Porter–Hayden,* 305 Md. 31, 501 A.2d 446, 449 (1985); *Szlinis v. Moulded Fiber Glass Cos.,* 80 Mich.App. 55, 263 N.W.2d 282 (1977); *DeCosse v. Armstrong Cork Co.,* 319 N.W.2d 45 (Minn.1982); *Morano v. St. Francis Hospital,* 100 Misc.2d 621, 420 N.Y.S.2d 92, 95 (N.Y.Sup.Ct.1979); *Cadieux v. Inter. Tel. & Tel. Corp.,* 593 F.2d 142, 144 (1st Cir.1979) (applying Rhode Island law); *Presslaff v. Robins,* 168 N.J. Super. 543, 403 A.2d 939, 942 (App.Div.1979); *Anthony v. Koppers,* 436 A.2d 181, 183 (1981); *Pastierik v. Duquesne Light Co.,* 514 Pa. 517, 526 A.2d 323 (1987); *White v. Johns–Manville Corp.,* 103 Wash.2d 344, 693 P.2d 687, 692 (1985); *see also* W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts* § 127, at 957 (5th ed. 1984) (noting that majority rule is that limitations in wrongful death actions begin to run on date of death and that courts have rejected applying discovery rule to wrongful death actions).

gested by Moreno—"fairness of result" and "legislative purpose"—were, in fact, considered and weighed by the court.

The only case cited by Moreno that directly supports his position is *Hanebuth v. Bell Helicopter International*, 694 P.2d 143 (Alaska 1984). In *Hanebuth*, the majority applied the discovery rule to an absolute limitations statute on the basis that failure to do so would result in injustice and would make it more profitable for a tortfeasor to kill rather than scratch a plaintiff. *Id.* at 146–47. However, as the dissent in *Hanebuth* points out, the majority reached its decision only after it ignored its own recent and controlling precedent, the plain language of the statute, and the vast majority of decisions to the contrary from other jurisdictions. *Id.* at 147 (Moore, J., dissenting). We decline to follow *Hanebuth* for these reasons, and because the decision both relies on distinguishable

cases[5] and fails to recognize the distinction between personal injury and death actions.[6]
*Summary.*

The language used in section 16.003(b) reflects a clear legislative intent to adopt an absolute two-year limitations period for wrongful death actions. The legislature could have either left "accrual" undefined in section 16.003(b) or could have stated that the cause of action accrues "on the death of the injured person *or upon discovery of the cause of death*"; either route would have allowed the discovery rule to be applied to section 16.003(b). Instead, the statute unambiguously specifies one event—death—and only that one event as the date upon which the action accrues. By specifying that date, the legislature has foreclosed judicial application of the discovery rule. If we concluded otherwise, we would be disregarding the plain meaning of section 16.003(b), distorting the clear function of the discovery rule, frustrating

---

5. The few cases relied on by the *Hanebuth* majority are distinguishable. *See Hanebuth*, 694 P.2d at 147. In *Frederick v. Calbio Pharmaceuticals*, 89 Cal.App.3d 49, 152 Cal.Rptr. 292 (1979), the court was interpreting an "accrual" statute and not an "absolute" statute like § 16.003(b). In *Myers v. McDonald*, 635 P.2d 84 (Utah 1981), the plaintiff did not become aware of the decedent's death until 3 years *after* it had occurred, whereas in the present case death was known immediately. Indeed, the *Myers* court expressly distinguished its decision from other decisions holding that limitations begin to run when the fact of death is known even if its cause is not. The decision in *Shaughnessy v. Spray*, 55 Or. App. 42, 637 P.2d 182 (1981) provides no support because that case was interpreting a statute which required an action to be commenced within 3 years after the occurrence "of the injury causing the death," rather than within 2 years after "death." Finally, it is not so clear that the discovery rule applies to the Illinois absolute statute; the *Hanebuth* majority omitted cases which have held that it does not, *see Greenock v. Rush Presbyterian St. Luke's Med. Center*, 65 Ill.App.3d 266, 22 Ill.Dec. 1, 3, 382 N.E.2d 321, 323 (1978), and the Illinois Supreme Court has not yet resolved the conflict.

6. The *Hanebuth* decision concludes that it is "absurd" and arbitrary to only allow application of the discovery rule in personal injury cases, and not in wrongful death actions. Yet, application of the discovery rule in personal injury cases is reasonable because the live plaintiff may either be unaware of an injury at the time of its occurrence, or in need of time to recover

before beginning an investigation. Neither of these considerations, however, are present in wrongful death actions because survivors are put on immediate notice by the event of death that an investigation into the cause of action must occur to preserve the claim. This definitive notice is what differentiates wrongful death and survival actions from personal injury actions. By disallowing application of the discovery rule to § 16.003(b), our opinion recognizes this distinction and effectuates the state interest in the prompt settlement of a decedent's affairs. *See Pastierik v. Duquesne Light Co.*, 514 Pa. 517, 526 A.2d 323 (1987); *Cadieux*, 593 F.2d at 144–45. Moreover, the dissent's argument that the Morenos were unaware of their ability to assert a cause of action is undermined by the fact that the Morenos, after receiving presumptive certificates of death describing Reye's syndrome as the cause of death, hired a "medical expert" who reviewed the file and determined that no medical malpractice had occurred. Faced with similar facts, the United States Supreme Court denied relief to a tardy plaintiff under the Federal Torts Claim Act, stating:

> If [the plaintiff] fails to bring suit because he is incompetently or mistakenly told that he does not have a case, we discern no sound reason for visiting the consequences of such error on the defendant by delaying the accrual of the claim until the plaintiff is otherwise informed or himself determines to bring suit, even though more than two years have passed from the plaintiff's discovery of the relevant facts about injury.

*United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979).

the legitimate purposes of limitation statutes, and ignoring the well-reasoned opinions of most other jurisdictions.

*"Open Courts".*

 Article I, section 13 of the Texas Constitution provides:

> All courts shall be open, and every person for an injury done him, and his lands, goods, person or reputation, shall have remedy by due course of law.

This provision, known as the "open courts" provision, is premised upon the rationale that the legislature has no power to make a remedy by due course of law contingent upon an impossible condition. *Morrison,* 699 S.W.2d at 207; *Nelson v. Krusen,* 678 S.W.2d 918, 921 (Tex.1984). In order to establish an "open courts" violation, a litigant must satisfy a two-part test: first, he must show that he has a well-recognized common-law cause of action that is being restricted; and second, he must show that the restriction is unreasonable or arbitrary when balanced against the purpose and basis of the statute. *Lucas v. United States,* 757 S.W.2d 687, 690 (Tex.1988); *Sax v. Votteler,* 648 S.W.2d 661, 666 (Tex. 1983).

Moreno contends that if section 16.003(b) does not provide for application of the discovery rule, it is unconstitutional because he neither discovered, nor could have discovered through the exercise of reasonable diligence, his cause of action within the two-year limitations period. In other words, Moreno contends that section 16.-003(b) is unconstitutional because it makes his remedy contingent on an impossible condition, namely, the discovery of the connection between aspirin and Reye's syndrome within two years after his child's death. Moreno argues that the "open courts" provision applies because Texas recognizes a common-law right to assert a wrongful death action. *See Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). Alternatively, Moreno argues that wrongful death *should* be accorded common-law status for purposes of review under the "open courts" provision because a death action incorporates common-law elements and be-

cause there is no fundamental distinction between a common-law action for non-fatal personal injuries and a statutory action for wrongful death. *See Vassallo v. Nederl–Amerik Stoomy Maats Holland,* 162 Tex. 52, 344 S.W.2d 421, 423 (1961). Finally, Moreno contends that section 16.003(b) is unreasonable and arbitrary because it denies him a remedy that would have been available to him had his child lived instead of died.

*Common-law Requirement.*

We first consider the question of whether Moreno is asserting a common-law cause of action. *See Waites v. Sondock,* 561 S.W.2d 772, 774 (Tex.1977); *Lebohm v. City of Galveston,* 154 Tex. 192, 275 S.W.2d 951, 954–55 (1955); *Hanks v. City of Port Arthur,* 121 Tex. 202, 48 S.W.2d 944 (1932). In *Hanks,* this court applied the "open courts" provision to a municipal ordinance which required notice to a municipality of a defective condition prior to the filing of suit. Essential to this court's holding in that case—that the ordinance violated the "open courts" provision—was a determination that the cause of action at issue, municipal liability, was common law rather than statutory. Implicit in the opinion was a recognition of the distinction between a court's power to apply "open courts" protection to common-law causes of action on the one hand, and statutorily created actions on the other. A common-law cause of action exists without a legislative enactment. As such, article I, section 13 of the Texas Constitution mandates that the courts be open to pursuing such claims. The legislature is not entitled to restrict or abrogate a common-law cause of action without a reasonable basis and without providing an adequate substitute. If, however, a cause of action was not recognized at common law, but was itself created by the legislature, any legislative abrogation of the cause of action would not be a true abrogation of a constitutional right. Rather, the legislature would simply not have granted as extensive a right as it might have. *See Castillo v. Hidalgo County Water Dist. 1,* 771 S.W.2d 633, 636 (Tex.App. —Corpus Christi 1989, no writ) ("Open Courts" provision does not apply to wrong-

ful death action, which is a statutory cause of action "that expands the rights of an individual beyond those granted by the common law"); *see also Stout v. Grand Prairie Indep. School Dist.,* 733 S.W.2d 290, 295 (Tex.App.—Dallas 1987, writ ref'd n.r.e.); *Tarrant County Hosp. Dist. v. Ray,* 712 S.W.2d 271, 273 (Tex.App.—Fort Worth 1986, writ ref'd n.r.e.).

This court has repeatedly said there was no recognized common-law cause of action for wrongful death. *See Witty,* 727 S.W.2d at 505–06; *Duhart v. State,* 610 S.W.2d 740, 742 n. 2 (Tex.1980); *Marmon v. Mustang Aviation, Inc.,* 430 S.W.2d 182, 186 (Tex.1968); *Elliott v. City of Brownwood,* 106 Tex. 292, 166 S.W. 1129 (1914); *Galveston, Harrisburg and San Antonio R.R. Co. v. Le Gierse,* 51 Tex. 189, 199 (1879). Wrongful death causes of action owe their existence to statutes changing this common-law rule. TEX.CIV.PRAC. & REM. CODE ANN. § 71.002; *Duhart,* 610 S.W.2d at 742 n. 2; *Marmon,* 430 S.W.2d at 182.[7] Moreno relies on *Moragne v. States*

*Marine Lines, Inc.,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970) to support his argument that the common law recognized an action for wrongful death. In *Moragne,* however, while the majority recognized a common-law action for wrongful death in maritime law, it readily acknowledged that no such action existed at common law. 398 U.S. at 382, 384, 90 S.Ct. at 1778, 1779. Similarly, Moreno's argument that a wrongful death action is really a common-law action because it incorporates common-law elements ignores the fact that it is the Wrongful Death Act itself which incorporates and sets forth the "elements" of the cause of action. TEX.CIV.PRAC. & REM. CODE § 71.002(b)(1986). The fact that common-law elements are required is the result of an express statutory provision and does not change the fact that the underlying right to bring the action is statutory.[8]

*Summary.*

Our most recent open courts decisions have consistently required that the cause

---

**7.** The common-law not only "denied a tort recovery for injury once the tort victim had died, it also refused to recognize any new and independent cause of action in the victim's dependents or heirs for their own loss at his death." W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts* § 127, at 945 (5th ed. 1984). (citations omitted). This rule denying a common-law right to assert a wrongful death action was confirmed in *Baker v. Bolton,* 1 Camp. 493, 170 Eng. Reprint 1033 (1808). In response to *Baker,* the English Parliament, in 1846, enacted "an Act for Compensating the Families of Persons Killed by Accident," otherwise known as Lord Campbell's Act. 9 & 10 Vict., ch. 93 § 2 (1846). *See Witty v. American General Distrib., Inc.,* 727 S.W.2d 503, 504 (Tex.1987) ("Prior the passage of Lord Campbell's Act, there was no statutory or common-law cause of action for wrongful death.") This statute served as the pattern for Texas' first wrongful death statute, enacted in 1860. Tex. Gen.Laws 32; *March v. Walker,* 48 Tex. 372, 375 (1877); *Sanchez v. Schindler,* 651 S.W.2d 249, 251 (Tex.1983).

**8.** The dissent attempts to establish that Texas recognizes a common law action for wrongful death despite the fact that *every* reported Texas decision considering the issue has held otherwise. For support, the dissent cites commentary and cases from other jurisdictions which argue that a wrongful death action *should* be recognized in the common law, and *not* that it

was. The dissent also argues that Texas, in 1840, implicitly adopted two cases from other jurisdictions which recognized the common-law right to assert a wrongful death action. *See Crofs v. Guthery,* 2 Root 90, 1 Am.Dec. 61 (Conn. 1794); *Ford v. Monroe,* 20 Wend. 210 (N.Y.Sup. Ct.1838). *Crofs* was decided fourteen years prior to *Baker v. Bolton* and "could not withstand the greater weight" of the latter decision, *Green, The Texas Death Act,* 26 Tex.L.Rev. 133, 136 n. 9 (1947), and *Ford* apparently recognized the action without comment. Neither *Crofs* nor *Ford,* however, was mentioned in *Carey v. Berkshire R.R.,* 55 Mass. (1 Cush.) 475, 48 Am.Dec. 616 (1848), where a leading American jurisdiction, the Supreme Judicial Court of Massachusetts, confirmed the rule set out in *Baker v. Bolton* (and universally accepted law ever since) that no action existed at common law for wrongful death. *See* W. Malone, *The Genesis of Wrongful Death,* 17 Stanford L.Rev. 1043, 1066–68 (1965). Finally, the dissent's argument does not answer the question of why the Texas Legislature would find it necessary to pass a wrongful death act in 1860 if there already was in existence a Texas common-law right to assert such an action. The dissent's approach would suggest that the 1860 act was superfluous. On the contrary, the 1860 act was designed to fulfill the same purpose as Lord Campbell's act: "... to fill the gap in the common law which had been created by the failure of the courts ... to provide a remedy for injuries resulting in death." *Green, The Texas Death Act,* 26 Tex.L.R. 133, 136 (1947).

of action restricted be one that is well defined in the common law. *Lucas v. U.S.,* 757 S.W.2d 687, 690 (Tex.1988); *Nelson v. Krusen,* 678 S.W.2d 918, 922 (Tex.1984). Moreno's constitutional attack on section 16.003(b) is not premised upon restriction of a common-law cause of action, and, therefore, necessarily fails the first prong of the open courts test. *See Castillo v. Hidalgo County Water Dist. 1,* 771 S.W.2d 633, 636 (Tex.App.—Corpus Christi 1989, no writ) (wrongful death action did not exist at common law, and it is only by virtue of statutory authority that such suits can be maintained; therefore, "open courts" provision simply does not apply).

Finally, and notwithstanding the dissent's argument to the contrary, we believe today's decision is entirely reconcilable with our decision in *Nelson,* 678 S.W.2d at 918. First, *Nelson* involved limitations on a malpractice action—a well-established common law cause of action. *See, e.g., Sax v. Votteler,* 648 S.W.2d 661, 664–666; *Texas & P. Ry. Co. v. Morin,* 66 Tex. 225, 18 S.W. 503 (1886). Second, because the injury complained of in *Nelson* did not manifest itself until *after* limitations had run, the Nelsons had no reason to know of their injury, and thus their ability to bring suit, until after limitations had expired. In the instant case, the injury—i.e. death—was immediately known. Even in those Texas cases which have applied the discovery rule

the courts have held that limitations begin to run *when the fact of injury is known. See, e.g., Rascoe v. Anabtawi,* 730 S.W.2d 460, 463 (Tex.App.—Beaumont 1987, no writ) (injury evident and limitations commenced on day plaintiff died); *Love v. Zales Corp.,* 689 S.W.2d 282, 285 (Tex.App.—Eastland 1985, writ ref'd n.r.e.) (discovery rule does not apply in wrongful death cases to toll running of limitations until plaintiff discovers that he has a cause of action); *cf. Coody v. A.H. Robins Co.,* 696 S.W.2d 154, 156 (Tex.App.—San Antonio 1985, no writ) ("The discovery rule speaks only of discovery of the injury [and] does not operate to toll the running of the limitations period until such time as plaintiff discovers all of the elements of a cause of action."); *Otis v. Scientific Atlanta, Inc.,* 612 S.W.2d 665, 666 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.) (limitations run from date injury is discovered, not from date of discovery of responsible party).[9]

For the reasons stated, our answer to the first certified question is that the discovery rule does not apply to TEX.CIV.PRAC. & REM.CODE § 16.003(b). In response to the second certified question, we answer that § 16.003(b), as interpreted, is not inconsistent with and violative of Article I, section 13 of the Texas Constitution.[10]

DOGGETT, J., joined by RAY and MAUZY, JJ., dissenting.

---

**9.** The dissent proposes not only that the discovery rule should apply to § 16.003(b), but also that the rule should operate to toll limitations until a plaintiff discovers a specific cause of action against a specific defendant. More specifically, the dissent proposes that courts allow wrongful death claims to be maintained whenever new scientific evidence links a particular disease with exposure to a particular substance, even though the death had occurred years, or even decades, earlier. This approach, however, would effectively "expand ... to infinity the time period during which wrongful death actions could be brought." *Pastierik,* 526 A.2d at 325. No cause of action would ever accrue until the plaintiff learned or should have learned of that specific cause of action, and no case would be concluded until every potential cause of action was discovered. This approach is also questionable from a public policy standpoint. It is hardly in the public interest "to encourage, literally, the unearthing of wrongful death causes of action long after death has oc-

curred because there is some suspicion that death was caused by a wrongful act." *DeCosse,* 319 N.W.2d at 52.

**10.** Art. 16, § 26 of the Texas Constitution provides as follows:

Every person, corporation, or company, that may commit a homicide, through wilful act, or omission, or gross neglect, shall be responsible, in exemplary damages, to the surviving husband, widow, heirs of his or her body, or such of them as there may be, without regard to any criminal proceeding that may or may not be had in relation to the homicide.

Tex.Const.Ann. art. 16, § 26 (Vernon 1955). The dissent suggests that § 16.003(b) unduly restricts this constitutional right to exemplary damages by placing an "impossible condition" upon the assertion of the underlying statutory wrongful death action, and, therefore, it is unconstitutional, or, at the very least, subject to an "open courts" challenge. This argument fails for two separate reasons.

DOGGETT, Justice, dissenting.

Tortfeasors take heart. Today this court grants you absolution—provided, of course, that you inflict only mortal wounds. Treating our century-old statute of limitations for wrongful death like some Strasbourg goose, the court's opinion crams it full of fictional legislative intent, and then ties to it the baggage of ancient English common law which a number of American courts, including the United States Supreme Court, have rejected as totally lacking in logical or historical justification. In this process, the opinion conveniently ignores or superficially distinguishes opinions from this court. Because I cannot join in this broad grant of a license to kill, I dissent.

Today's decision is irreconcilable with *Nelson v. Krusen,* 678 S.W.2d 918 (Tex. 1984), in which this court held unconstitutional a similar "absolute" statute of limitations. Justice Spears, writing for the majority, condemned that statute in no uncertain terms, stating:

> The limitation period of [the medical malpractice statute], if applied as written, would require the Nelsons to do the impossible—to sue before they had any reason to know they should sue. *Such a result is rightly described as "shocking" and is so absurd and so unjust that it ought not to be possible. Hays v. Hall,* 488 S.W.2d 412, 414 (Tex.1972); *Gaddis v. Smith,* 417 S.W.2d 577, 580, 581 (Tex.1967).

678 S.W.2d at 923 (emphasis supplied). Yet today's decision reaches such an equally shocking and unjust result. The limited facts of this case, certified to this court by the Fifth Circuit, are no less compelling than those in *Nelson.* The Morenos and the Sloans both had infant children who died of Reye's Syndrome after being administered doses of Bayer's Childrens Chewable Aspirin, manufactured by Sterling Drug, Inc. After the death of the infants, the parents were informed that the use of aspirin sometimes contributed to Reye's Syndrome. The only real difference between this case and *Nelson* is that here the injured parties had the bad luck to die.[1]

---

First, as parents of a deceased child, the Morenos have no constitutional right to recover exemplary damages under art. 16, § 26. *See Hofer v. Lavender,* 679 S.W.2d 470, 475 (Tex.1984) (Supreme Court has consistently held that class of beneficiaries listed in art. 16, § 26 does not include parents of deceased child). Indeed, even if this court (or the legislature) wanted to *broaden* the class of persons entitled to recover exemplary damages to include parents of deceased children, we would be without authority to do so. *Id.; see also Scoggins v. Southwestern Electric Service Co.,* 434 S.W.2d 376 (Tex.Civ. App.—Tyler 1968, writ ref'd n.r.e.) (holding that provision in Wrongful Death Act that allowed parents to recover exemplary damages was invalid under art. 16, § 26, since legislature could not enlarge on exemplary damages).

Second, the question of whether § 16.003(b) would operate *in other cases* to unduly restrict the constitutional right to exemplary damages is not properly before this court because the second certified question only asks whether § 16.003(b) "as applied to the plaintiffs herein violate[s] the open courts provision...." Since it cannot be shown that 16.003(b) violates Moreno's rights under art. 16, § 26, the statute's application to *other plaintiffs* in other cases is, according to the terms of the certified question, irrelevant. Moreover, this court has repeatedly reaffirmed the rule that if a plaintiff cannot prove the unconstitutionality of a limitations statute as applied to him, the statute will not be struck down merely because it might operate in an unconstitutional manner in another case. *See Morrison v. Chan,* 699 S.W.2d 205, 207 (Tex. 1985); *Nelson v. Krusen,* 678 S.W.2d 918, 923 (Tex.1984).

1. Relying upon facts taken from the summary judgment record of the federal district court, rather than those certified by the Fifth Circuit, the court asserts at footnote 6 that even if the discovery rule were applied, the Petitioners' wrongful death actions would still be barred by limitations. If that analysis were correct, the proper disposition of this case would be to return the certified questions to the Fifth Circuit unanswered. Further, the court ignores an affidavit stating that, although the ability to bring suit for *medical malpractice* against the doctors and the hospitals treating the infant children was investigated and found wanting, no investigation of the possibility of a link between the use of aspirin and Reye's Syndrome (which would serve as a basis of a *products liability* action) was made at that time. Moreno Record 284–85; Sloan Record 62–63. The facts of this case are not similar to those in *United States v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), as the opinion states. In *Kubrick,* the Court held that the statute of limitations began to run when the plaintiff had knowledge of the injury *and* its causative link to use of a particular drug.

The court's opinion thus provides a perverse incentive for a tortfeasor to kill rather than merely maim.

The asserted rationale to support this untenable result is two-fold. First, the court examines the "plain meaning" of the "unambiguous" limitations statute and concludes that the legislature has intentionally foreclosed application of the discovery rule. This approach directly conflicts with the instruction given to us in the Code Construction Act that *"whether or not the statute is considered ambiguous on its face,"* we must consider both the object sought to be obtained and the consequences of a particular construction. Tex. Gov't Code Ann. § 311.023 (Vernon 1988) (emphasis supplied).[2] We are further mandated that in construing this enactment "a just and reasonable result is intended." *Id.* § 311.021; *see also Witty v. American General Capital Distributors, Inc.,* 727 S.W.2d 503, 504 (Tex.1987) (the Texas "wrongful death statute is remedial in na-

ture and must be liberally construed . . .").[3] As conceded in *Nelson,* what the court has achieved in foreclosing the discovery rule is the converse—a totally unjust and unreasonable result. The parents are permanently denied an opportunity to have their claims for the infants' deaths considered on the merits. The court twists the statute to achieve an artificial, but complete bar to these families recovering by requiring that they bring a cause of action before they could reasonably have discovered its existence.

Any careful analysis of the legislative intent and history of Section 16.003(b) contradicts the court's conclusion. An action for wrongful death has been tied to the date of death since the first passage of a death act in Texas and has survived in virtually identical form to this date.[4] Given this background, the legislature cannot be charged with the intent to abolish the discovery rule in wrongful death actions.

**2.** The opinion cites *RepublicBank Dallas, N.A. v. Interkal, Inc.,* 691 S.W.2d 605, 607 (Tex.1985), for the proposition that rules of statutory construction may not be applied when a statute is unambiguous. That case stands in clear conflict with the dictates of the Code Construction Act, quoted above. *Interkal,* however, involved interpretation of a statute and not a code provision to which the Code Construction Act is applicable. 691 S.W.2d at 607 n. 1. Nor did the court in *Cail v. Service Motors, Inc.,* 660 S.W.2d 814 (Tex.1983), consider the effect of the Code Construction Act.

**3.** Further, "[t]his court has always endeavored to interpret the laws of Texas to avoid inequity." *Sanchez v. Schindler,* 651 S.W.2d 249, 252 (Tex. 1983) (opinion construing Wrongful Death Act by Spears, J.).

**4.** That act provided: "The action shall be brought within one year after the death of the deceased." Law of February 2, 1860, ch. 35, § 3, 1860 Tex.Gen.Laws 33. The limitations provision was subsequently moved from the wrongful death act to be included as part of a general limitations statute. Tex.Rev.Civ.Stat. Ann. art. 3202 (Vernon 1879) provided: "There shall be commenced and prosecuted within one year after the cause of action shall have accrued . . .: 4. Actions for injuries done to the person of another where death ensued from such injuries; and the cause of action shall be considered as having accrued at the death of the party injured." *See also* Tex.Rev.Civ.Stat.Ann. art. 3353 (same language). The time for bringing an action for death was later expanded to two

years. Law of March 4, 1897, ch. 14, § 1, 1897 Tex.Gen.Laws 12. Other than replacing the plural "injuries" with the singular "injury," the accrual language was unchanged. The statute was amended in 1979 to delete the two-year limitations period for actions for debts and accounts, but the limitations provision for a wrongful death action was not changed. Act of June 13, 1979, ch. 716, § 1, 1979 Tex.Gen.Laws 1768–69; *see also* Tex.Rev.Civ.Stat.Ann. art. 5526 (Vernon 1958) (repealed 1985). The statute was repealed and codified, with no substantive change intended, as part of the Texas Civil Practice and Remedies Code. Act of June 16, 1985, ch. 959, §§ 1 (new provision), 9 (repealer), and 10 (no substantive change intended).

The court asserts that this reenactment and codification after the decision of *Stiles v. Union Carbide Corp.,* 520 F.Supp. 865 (S.D.Tex.1981), refusing to apply the discovery rule in a wrongful death action, worked a legislative adoption of that interpretation. While the legislature may indeed adopt a judicial interpretation by reenacting a statute, *see Robinson v. Central Texas MHMR Center,* 780 S.W.2d 169, 170–71 (Tex.1989), that interpretation must be by a court of last resort. *See Texas Employer's Ins. Ass'n v. Lightfoot,* 139 Tex. 304, 162 S.W.2d 929 (1942). *Cunningham v. Cunningham,* 120 Tex. 491, 40 S.W.2d 46, 51 (1931), cited in the opinion refers to an "interpretation *which has been settled by the courts."* The fact that this question has been certified to this court by the Fifth Circuit indicates that there is no well-settled interpretation by the Texas courts.

It was not until 1967 that this court recognized the application of the discovery rule in an action for personal injuries. *Gaddis v. Smith*, 417 S.W.2d 577 (Tex.1967). While the 1879 Texas Legislature no doubt had its strong points, it cannot be said that it was sufficiently foresighted to have as its objective the abolition of a doctrine that did not exist in either name or substance until almost a century later.[5]

This court examined the applicable legislative purpose many years ago in *De Harn v. Mexican National Ry.*, 86 Tex. 68, 70, 23 S.W. 381, 381–82 (1893):

> The reason of the provision is obvious. Since no cause of action could be brought by the relatives of the injured person until death had ensued, and since a great length of time might elapse between the injury and the death, it is reasonable that the time of the death should be taken as the point from which limitation should begin to run.

The court completely misapplies this case. The question is not whether *De Harn* deals with the issue of the application of the discovery rule—as stated above, it could not. The issue is rather to determine the general legislative intent in setting the date of death as the commencement point for the running of limitations. As *De Harn* states in unmistakable terms, that purpose was solely to protect the beneficiaries of one who lingered after receiving a lethal injury; the statute is designed to preserve, not to destroy, a cause of action. The result reached by today's opinion stands in clear contradiction of this legislative objective.

As evidenced by previous decisions of this court, labelling a statute of limitations "absolute" does not, as the opinion asserts, make it impenetrable to tolling principles. For example, in *Borderlon v. Peck*, 661 S.W.2d 907 (Tex.1983), we tolled an "absolute" statute of limitations on the basis of the common-law doctrine of fraudulent concealment. That doctrine has been held applicable by this court to toll the statute of limitations in actions for wrongful death. *Texas & P. Ry. v. Gay*, 86 Tex. 571, 576, 26 S.W. 599, 614 (Tex.1894).[6]

As a review of the cases cited by the court evidences, tolling of limitations to permit discovery is the rule rather than the exception. *See, e.g., Willis v. Maverick*, 760 S.W.2d 642 (Tex.1988) (discovery rule applicable in legal malpractice action); *Weaver v. Witt*, 561 S.W.2d 792 (Tex.1977) (medical malpractice); *Kelley v. Rinkle*, 532 S.W.2d 947 (Tex.1976) (action for libel of credit reputation). These cases are not limited, as the court's opinion concludes, to tolling limitations until the fact of the injury is known. In *Willis*, we held that:

> [T]he statute of limitations for legal malpractice does not begin to run until the claimant discovers or should have discovered through the exercise of reasonable care and diligence the facts establishing *the elements of his cause of action.*

760 S.W.2d at 646 (emphasis supplied).[7] Knowledge of Petitioners' causes of action was not complete upon discovery of the injury (*i.e.*, death) as the opinion suggests;

**5.** This situation is fundamentally different from that presented to the court today in *Dow Chemical Co. v. Alfaro*, 786 S.W.2d 674 (Tex.1990). Unlike the discovery rule, the concept underlying the doctrine of *forum non conveniens* was in existence and being applied on the date the statute was enacted. That this old concept later acquired a new label—"forum non conveniens" —did not affect the original legislative action in abolishing it.

**6.** The court miscomprehends this argument. The question is not whether the doctrine of fraudulent concealment applies to the facts of this case. Rather, the question is whether statutes of limitations labelled "absolute" are subject to common-law tolling principles such as the doctrine of fraudulent concealment *and* the discovery rule. Our decisions in *Borderlon* and *Gay* indicate that they are.

**7.** *See also Gaddis v. Smith*, 417 S.W.2d 577, 581 (Tex.1967) (discovery of the "wrongful act" triggers limitations); *Neagle v. Nelson*, 685 S.W.2d 11, 12 (Tex.1985) (discovery of the "wrong"). The cases cited in the court's opinion addressed factual situations where the plaintiff was aware of both the injury *and* its cause. *See, e.g., Coody v. A.H. Robins Co.*, 696 S.W.2d 154, 156 (Tex. App.—San Antonio 1985, no writ) (stating that plaintiff learned of injury and its cause simultaneously); *Otis v. Scientific Atlanta, Inc.*, 612 S.W.2d 665, 666 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.) (plaintiffs do not assert that they did not know the cause of their injury).

the element of the causative link between the use of aspirin and Reye's Syndrome was equally critical.[8]

Rather than following the great weight of our own precedent, the court instead relies on two cases in which the court refused to apply the discovery rule. Yet in those cases, unlike here, the legislature had taken more than ample steps to bar application of the rule. In the first of these two cases construing the "absolute" statute of limitations applicable to health care liability claims, this court had before it abundant materials reflecting the legislative intent underlying the Medical Liability and Insurance Improvement Act. *Morrison v. Chan*, 699 S.W.2d 205, 208 (Tex.1985). At the time that limitation provision was passed, the discovery rule was well known to the Texas Legislature. A key legislative objective was to: *"reduce excessive frequency and severity of health care liability claims."* Tex.Rev.Civ.Stat.Ann. art. 4590i, §§ 1.02(a)(5) and 1.02(b)(1) (Vernon Supp.1989). As evidenced by *De Harn, supra,* the objective in defining the accrual date for wrongful death as the date of death was to *expand* and not to contract the cause of action. Unlike the statute applicable to actions for wrongful death, the health care liability limitation provision makes no reference to an "accrual" of a cause of action and disclaims the effect of other laws that would toll the time period for bringing suits, including for minority and other disabilities. The limitations statute for wrongful death is markedly different in this regard; that statute is subject to tolling for minority and other disabilities. Tex.Civ.Prac. & Rem.Code Ann. § 16.001 (Vernon 1986 & Supp.1990).

The other cited case, *Safeway Stores, Inc. v. Certainteed Corp.*, 710 S.W.2d 544 (Tex.1986), is even more persuasive authority to construe the statute before us to permit application of the discovery rule.

The issue presented in that case was whether the statute of limitations for breach of warranty ran from the date of the breach or that of discovery. The statute sets the date of accrual *and* explicitly disclaims the applicability of the discovery rule, providing that a "cause of action accrues when the breach occurs, *regardless of the aggrieved party's lack of knowledge of the breach."* Tex.Bus. & Comm.Code Ann. § 2.725 (Vernon 1968) (emphasis supplied). Thus, in adopting Section 2.725, the legislature determined that more was needed to bar the discovery rule than just referring to the date of accrual; *that rule needed to be expressly disclaimed.* This statute demonstrates an appropriate way to preclude application of the discovery rule. The court ignores the fact that the legislature is quite capable of expressly disclaiming the discovery rule but has not done so in the context of wrongful death.

To support its improbable position the court resorts to case law from other jurisdictions which have little comparability to the Texas statute. Most if not all of these cases appear to involve a limitations provision contained within the wrongful death statute itself and not one, like ours, that is part of a general limitations statute. The courts thus viewed the limitations as a condition upon the right, not merely the remedy, subject to strict construction in derogation of the common law. No such interpretation is applicable in this state. Because the Texas statutes concerning wrongful death and limitations are separate, the latter is procedural rather than a substantive qualification or condition restricting the right to bring an action for death. *Franco v. Allstate Ins. Co.*, 505 S.W.2d 789, 792–93 (Tex.1974).

An approach far superior to that taken by today's opinion is contained in *Hanebuth v. Bell Helicopter International*, 694 P.2d 143, 144 (Alaska 1984). In consider-

---

**8.** In *Willis,* we concluded that "any burden placed upon an attorney by application of the discovery rule is less onerous than the injustice of denying relief to unknowing victims." 760 S.W.2d at 646. Yet the injury worked in that case was much less severe than the deaths that occurred here allegedly due to distributing a dangerous pharmaceutical product to the Texas public. Surely the burden placed upon the drug manufacturer is equally less onerous than the injustice of denying relief to unknowing families, like the Morenos and the Sloans, whose children have died.

ing a requirement that a wrongful death action be "commenced within two years after the death," that court's considerations tracked the same concerns delineated under Texas law. Echoing *Nelson*, the Alaskan court applied the discovery rule to comport with principles of "fundamental fairness," to be "consistent with the purposes of the act," and to avoid "unjust and absurd results." 694 P.2d at 146. The court said it was "profoundly unfair to deprive a litigant of his right to bring a lawsuit before he has any reasonable opportunity to do so." *Id.* at 147. Further, "a tortfeasor whose conduct has been so grievous as to cause death would be exonerated, while another tortfeasor, guilty of the same conduct except for the fortuity that it merely caused injury, would be held responsible." *Id.*[9] The reasoning of today's opinion in rejecting *Hanebuth* is insightful. One who is only maimed, we are told at note 5, may be "in need of time to recover before beginning an investigation." Why shouldn't parents whose child has been wrongfully taken from them be in need of time to recover and discover as well? Solely because an insensitive court refuses Texas families that right.

The statute before us for interpretation contains only two sentences:

A person must bring suit not later than two years after the day the cause of action accrues for injury resulting in death. The cause of action accrues on the death of the injured person.

Tex.Civ.Prac. & Rem.Code Ann. § 16.003(b) (1986). In today's opinion, the court determines from the "plain language" of this minimal statute that the legislature intended to bar the yet-to-be-judicially-created discovery rule even though this statute *permits tolling* under exceptions not just grounded in statute, such as for minors, but also those judicially-created, such as for fraudulent concealment. I cannot concur in such a complete manipulation of legislative intent.

The second asserted basis for the decision today is its refusal to extend constitutional protection to a cause of action for wrongful death which it conveniently pigeonholes as "wholly statutory." Because it is claimed that the "open courts" provision of article I, section 13 of the Texas Constitution protects only common-law causes of action, the court concludes that it is powerless to review a restriction on the exercise of a statutory wrongful death action. This conclusion is based on two flawed assumptions.

First, the distinction between common law and statutory causes of action for purposes of review under the "open courts" provision is more honored in the breach than the observance. *LeCroy v. Hanlon*, 713 S.W.2d 335 (Tex.1986), authored by Justice Spears, is a prime example. There this court struck as unconstitutional under the "open courts" provision a filing fee that went to state general revenues. The effect of the fee with respect to the individual plaintiff in that case was to bar his filing of suit under the Texas Deceptive Trade Practices Act and the Texas Insurance Code, *i.e., wholly statutory causes of action.* 713 S.W.2d at 336. For reasons indiscernible, the court in *LeCroy* was not troubled by today's controlling distinction between common law and statutory causes of action. Yet the failure to apply the discovery rule so as to prohibit completely a family's exercise of its legal rights closes the door to the Texas courts far more permanently than charging the extra forty dollar filing fee rejected in *LeCroy*. The constitutional guarantee that "[a]ll courts shall be open" to "every person" is a hollow one to families like the Morenos and the Sloans.

Second, this injustice cannot simply be defined away by claiming a wrongful death action is "wholly statutory." While a

---

**9.** A similar result has been reached as to an Illinois statute requiring that actions be commenced within two years after death. *See Eisenmann v. Cantor Brothers, Inc.,* 567 F.Supp. 1347 (N.D.Ill.1983) (to deny application of discovery rule would produce absurd result); *Matter of Johns–Manville Asbestosis Cases,* 511 F.Supp. 1235 (N.D.Ill.1981); *Fure v. Sherman Hospital,* 64 Ill.App.3d 259, 21 Ill.Dec. 50, 380 N.E.2d 1376 (1978); *Praznik v. Sport Aero, Inc.,* 42 Ill.App.3d 330, 355 N.E.2d 686 (1976).

wrongful death action may have once been considered a creature of statute, it has evolved into a complex hybrid—part constitutional, part statutory and part judicially-developed common law. An early decision of this court recognized the multi-faceted nature of a wrongful death action. While noting the statutory nature of the action, this court nonetheless stated:

> In our own state, this right of action *is wisely recognized by the organic law, supplemented by guarded legislative provisions* enacted for the purposes of securing to the beneficiaries just compensation in a case meriting it. . . .

*Nelson v. Galveston, H. & S.A. Ry.,* 78 Tex. 621, 624, 14 S.W. 1021, 1022 (1890) (emphasis supplied).[10]

Even the most cursory examination of the history of the Texas Wrongful Death Act reveals its tripartite nature. As first adopted in Texas in 1860, the statute was a mere four paragraphs in length, setting out the beneficiaries, the potential defendants (basically providers of public transport) and the basis of the cause of action (negligence or carelessness), permitting the recovery of damages and requiring suit to be brought within one year after death. Law of February 2, 1860, ch. 35, 1860 Tex.Gen.Laws 32. While the statute has been amended several times over the last 129 years, primarily to expand the class of potential defendants and to permit recovery of exemplary damages, it remains a "bare bones" enactment. Over that lengthy time period,

many interstices of the statute have been left to the courts to fill, relying on common-law concepts.[11] In fact, writing for the court in *Sanchez v. Schindler,* 651 S.W.2d 249, 252 (Tex.1983), Justice Spears indicated a strong preference for this judicial development of the wrongful death statute. Because of the symbiotic relationship between the common law and statute, an action for wrongful death merits review under the "open courts" provision of article I, section 13 of the Texas Constitution. Labelling this action "statutory" rather than engaging in thoughtful analysis provides a convenient escape mechanism from the Houdini-defying task of reconciling this opinion with *Nelson v. Krusen.*

A cause of action for wrongful death is also in part constitutionally given. As initially adopted, the Texas Wrongful Death Act made no provision for exemplary damages. To correct this omission, the Texas Constitution of 1869 included a provision permitting recovery of exemplary damages for "homicide, through wilful act, or omission." Tex.Const. art. XVI, § 26, interp. commentary (Vernon 1955). The provision was amended in 1879 to expand the grounds for recovery to include "gross neglect." *Id.; see also* Demarest, *The History of Punitive Damages in Texas,* 28 S.Tex.L.J. 535, 540 (1987).

This constitutional right may not be legislatively abolished or restricted. In *Morton Salt Co. v. Wells,* 123 Tex. 151, 70

---

**10.** A number of our sister states have recognized this hybridization to permit application of common-law principles in a wrongful death action. *See, e.g., Summerfield v. Superior Court,* 144 Ariz. 467, 698 P.2d 712, 718 (1985) (en banc) (the wrongful death "statute and precedent have combined to produce a cause of action with common law attributes"); *Hanebuth v. Bell Helicopter Int'l,* 694 P.2d 143, 146 (Alaska 1984) (wrongful death statute treated like other common law tort actions, finding discovery rule applies to "absolute" statute of limitations); *O'Grady v. Brown,* 654 S.W.2d 904, 908, 911 (Mo.1983) (en banc) (wrongful death statute "mends the fabric of the common law" and incorporates common law principles); *Haakanson v. Wakefield Seafoods, Inc.,* 600 P.2d 1087, 1091–92 (Alaska 1979) (no legislative intent to treat wrongful death action different from other common law tort actions, thus limitations statute tolled for minors); *Gaudette v. Webb,* 362

Mass. 60, 284 N.E.2d 222, 229–30 (1972) (declaring existence of common-law wrongful death action and tolling limitations provision for minors). *See also* Restatement (Second) of Torts § 925 comment k (1979) (noting trend to "allow ameliorating common-law principles to apply" to wrongful death actions).

**11.** *See, e.g., Clifton v. Southern Pacific Transp. Co.,* 709 S.W.2d 636, 640 (Tex.1986) (gross negligence standard of *Burk Royalty* applied to wrongful death action); *Yowell v. Piper Aircraft Corp.,* 703 S.W.2d 630, 632–33 (Tex.1986) (loss of inheritance damages recoverable in wrongful death action); *Sanchez v. Schindler,* 651 S.W.2d 249, 252–54 (Tex.1983) (damages for loss of society and mental anguish recoverable). *See generally* Tex.Civ.Prac. & Rem.Code Ann. §§ 71.001–011 (Vernon 1986 and 1989 Supp.) (extensive annotations).

S.W.2d 409, 410 (1934), the issue presented was whether the plaintiffs in a death action covered by the worker's compensation statute were first required to present a claim for exemplary damages to the Industrial Accident Board prior to recovery in court. This court stated:

> We agree with the Court of Civil Appeals that the district court had original jurisdiction, without the presentation of the claim for exemplary damages to the Industrial Accident Board. *The cause of action here asserted is one given by the Constitution, and the Legislature was without power to add to or take from the conditions under which, by virtue of the Constitution, it could be maintained,* nor did it attempt to do so.

70 S.W.2d at 410. A similar unconditional analysis was employed in *Hanks v. City of Port Arthur*, 121 Tex. 202, 48 S.W.2d 944 (1932), a case cited with frequency in today's opinion. Port Arthur's attempt to preclude liability through its municipal charter by requiring it be notified of a defective condition prior to the occurrence of an injury was held unconstitutional under *both* the "open courts" provision, article I, section 13 of the Texas Constitution, and article I, section 17, guaranteeing just compensation for a taking of property for public use. 121 Tex. at 206, 48 S.W.2d at 945. In examining the question of whether the charter could condition the constitutional right to bring suit for compensation, this court stated:

> The Constitution admits of no such limitation.
> *When a city violates the Constitution to the damage or injury of a complaining party, a constitutional cause of action arises, and the Legislature is powerless to make provision for a notice of the type here involved.* The Constitution, sec. 17, art. 1, having fixed the method by which a city may take or

damage private property without liability for tort, the constitutional method is exclusive, and the Legislature is without power to prescribe any other method to accomplish the same purpose.

121 Tex. at 208, 48 S.W.2d at 946 (emphasis supplied). The court is content to ignore this well-entrenched principle of constitutional law.[12]

An exercise in somnambulism, today's opinion merely sleepwalks through the law, reciting the rule that there was no cause of action for death at common law but not engaging in conscious thought. Of the five cases cited as authority for the proposition that there was no action for death at common law, not one of them engages in any in-depth analysis. Only two reference the rule's origin as dictum in Lord Ellenborough's decision in *Baker v. Bolton* in England in 1808. *Marmon v. Mustang Aviation, Inc.*, 430 S.W.2d 182, 184 n. 4 (Tex. 1968); *Galveston, H. & S.A. Ry. v. Le Gierse*, 51 Tex. 189, 198–99 (1879). One commentator has described the rule as "a magical intoned incantation recited by rote," followed by courts without analysis of the validity of its historical origins or current applicability. S. Speiser, *Recovery for Wrongful Death 2d* §§ 1:1 and 1:5 (1975). That criticism accurately describes today's opinion and the precedent it cites.

A hard look at this common-law prohibition reveals that it lacks any rational basis and should not be blindly followed by this court. The *Baker v. Bolton* case was a *nisi prius* case (*i.e.*, a case tried in the local court before a single judge rather than en banc in the superior court at Westminster) without authority or supporting reasoning for its statement that the common law barred redress for a fatal injury. *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 382–83, 90 S.Ct. 1772, 1778–79, 26 L.Ed.2d

---

**12.** The majority dismisses the problem of a conflict with the constitutional right to exemplary damages in a wrongful death action on the grounds that no such damages are allowed to a parent for the death of a child. A similar argument in *Hanks* was found unpersuasive:

> It is true that in the case before us the question of taking property in violation of the

Constitution is not in issue, but the validity of the charter section may be raised, and, *if void for any reason,* it cannot be enforced in this case.

121 Tex. at 208–09, 48 S.W.2d at 947.

339 (1970).[13] Contrary to the importance it later achieved, the decision in *Baker v. Bolton* went unnoticed by the English courts until 1873.[14] *See* Malone, *The Genesis of Wrongful Death*, 17 Stan.L.Rev. 1043, 1059 (1965). In fact, the first court anywhere to treat it as precedent was an American one, *Carey v. Berkshire R.R.*, 55 Mass. (1 Cush.) 475, 48 Am.Dec. 616 (1848), some 40 years after *Baker v. Bolton* was decided.[15] During that interval, there was no reported opinion denying a wrongful death claim in this country, while several early decisions expressly recognized such a common-law action. Malone, *The Genesis of Wrongful Death, supra*, at 1066–67; *Crofs v. Guthery*, 2 Root 90, 1 Am.Dec. 61 (Conn.1794); *Ford v. Monroe*, 20 Wend. 210 (N.Y.Sup.Ct.1838); *James v. Christy*, 18 Mo. 162 (1853).

This historical timeline suggests that the English common-law prohibition was never truly part of the common law of Texas. In 1840, the Congress of the Republic of Texas enacted a law which adopted the common law of England to the extent consistent with the Constitution and laws of this state. This law has been interpreted by this court to mean the common law of England as *"declared by the courts of the different states of the United States." Grigsby v. Reib*, 105 Tex. 597, 600, 153

S.W. 1124, 1125 (1913) (emphasis supplied). As discussed above, in 1840 the American courts recognized a common-law action for wrongful death.

Building on virtually universal commentary critical of the English common-law rule barring actions for wrongful death [16] and the questionable historical basis for the rule's adoption, the United States Supreme Court in the landmark *Moragne* decision recognized a common law action for wrongful death in maritime cases. Writing for the unanimous court, Justice Harlan engaged in a scholarly examination of the three asserted justifications of the common law prohibition and soundly rejected them all. The first, deemed the "sole substantial basis," is the felony-merger doctrine:

> According to this doctrine, the common law did not allow civil recovery for an act that constituted both a tort and a felony. The tort was treated as less important than the offense against the Crown, and was merged into, or pre-empted by, the felony. The doctrine found practical justification in the fact that the punishment for the felony was the death of the felon and the forfeiture of his property to the Crown; thus, after the crime had been punished, nothing remained of the felon or his property on which to base a civil action.

**13.** One commentator has pointed out that *Baker v. Bolton* was not extensively argued, that the reported opinion is very brief and that the controversial rule was "laid down without either sustaining reasoning or supporting authority." S. Speiser, *Recovery for Wrongful Death 2d* § 1:2 (1975); *see also* Smedley, *Wrongful Death—Bases of the Common Law Rule*, 13 Vand.L.Rev. 605 (1960) (concluding the case was wrongly decided as well as overbroad). Even Dean Prosser has condemned the trial judge in *Baker v. Bolton,* stating that Lord Ellenborough's "forte was never common sense." W. Prosser, *Law of Torts* § 127 (4th ed. 1971).

**14.** This rule never even made it as far as Scotland; that country recognized a common-law action for wrongful death. *Moragne, supra,* 398 U.S. at 398 n. 13, 90 S.Ct. at 1786 n. 13.

**15.** The *Carey* case was subsequently overruled by the Massachusetts Supreme Court in *Gau-*

*dette v. Webb,* 362 Mass. 60, 284 N.E.2d 222, 229 (1972).

**16.** The common-law prohibition against maintaining an action for wrongful death has been universally denounced by commentators as having no logical or historical basis and as unfairly differentiating between wrongful conduct resulting in mere injury and that resulting in death. *See, e.g.,* F. Pollock, *Law of Torts* 55 (Landon ed. 1951) (terming rule "barbarous"); Smedley, *Wrongful Death—Bases of the Common Law Rules,* 13 Vand.L.Rev. 605 (1960) (rule has outlived its usefulness); Holdsworth, *The Origin Of the Rule in Baker v. Bolton,* 12 Law Q.Rev. 431, 437 (1916) (rule cannot be justified on precedential or technical grounds); F. Tiffany, *Death by Wrongful Act* § 12 (2d ed. 1913) ("[n]o satisfactory reason for the rule has ever been suggested"); P. Keeton, *Prosser and Keeton on Torts* § 125 (5th ed. 1984) (criticizing rule on basis that "it was cheaper to kill a person than to injure him").

*Moragne,* 398 U.S. at 381, 90 S.Ct. at 1778 (citations omitted); *see also Le Gierse,* 51 Tex. at 198–99. The *Moragne* opinion rejected the applicability of this historical justification in the United States, noting that American law never recognized forfeiture of property as felony punishment. *Moragne,* 398 U.S. at 384, 90 S.Ct. at 1779. Texas law is in accord; the early laws of the Republic of Texas do not appear to recognize forfeiture, and this sanction was expressly barred by the Texas Constitution of 1876. Tex. Const. art. I, § 21.

The second basis for the rule reviewed in *Moragne* is the asserted difficulty of computing damages because of a "repugnance ... to setting a price upon human life." *Moragne,* 398 U.S. at 385, 90 S.Ct. at 1779 (citations omitted). Recognizing that damages are regularly determined in statutory wrongful death actions and such calculation poses no greater difficulty than awarding damages for nonfatal injuries, the Court found this basis of the rule unpersuasive. The third basis is the ancient common-law rule that a personal cause of action did not survive the death of its possessor. The Court noted that rule applies only to the victim's personal claims and has no bearing on whether a dependent should be permitted recovery for the injury he suffers because of the victim's death. *Id.* at 385, 90 S.Ct. at 1779. The Court then concluded that:

> The American courts never made the inquiry whether this particular English rule, bitterly criticized in England, "was applicable to their situation," and it is difficult to imagine on what basis they might have concluded that it was.

*Id.* at 386, 90 S.Ct. at 1780.[17]

The *Moragne* decision noted the prevalence of statutes permitting recovery for wrongful death, adopted in all fifty states and by numerous federal statutes, and concluded:

These numerous and broadly applicable statutes, taken as a whole, make it clear that there is no present public policy against allowing recovery for wrongful death. The statutes evidence a wide rejection by the legislatures of whatever justifications may have once existed for a general refusal to allow such recovery.... The policy thus established has become itself a part of our law, to be given its appropriate weight not only in matters of statutory construction but also those of decisional law.

398 U.S. at 390–91, 90 S.Ct. at 1782.[18] Although this analysis in *Moragne* was employed in an opinion by Justice Spears to justify extending comparative causation to a products liability action, *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 427 (Tex. 1984), today *Moragne* is curiously limited to its facts.

The facts of the case before us differ vastly from the stagecoach and railway accidents for which, over a century ago, the scope of the wrongful death statute was originally envisioned. We are in an age of more insidious, less obvious causes of death, many of which are simply not discoverable within the two-year limitations period. Thus, not simply the occasional family, *but an entire class of families will be deprived of their claims* by the court's decision. This deprivation cannot be justified on the traditional ground that these victims "slept on their rights," because they could not have been aware of the basis of their cause of action until after their claims were barred. The opinion thus defies the very purpose of the discovery rule—to prevent legislation from merely affording "a delusive remedy." *Urie v. Thompson,* 337 U.S. 163, 169, 69 S.Ct. 1018, 1024, 93 L.Ed. 1282 (1949).

**17.** The compelling logic of *Moragne* has given rise to state court cases that recognize in some manner a common law action for wrongful death. *See, e.g., Haakanson v. Wakefield Seafoods, Inc.,* 600 P.2d 1087, 1092, n. 11 (Alaska 1979); *Gaudette v. Webb,* 362 Mass. 60, 284 N.E.2d 222, 229 (1972); *see also* Restatement (Second) of Torts § 925 comment k (1979).

**18.** *Accord* Pound, *Comments on Recent Important Admiralty Cases,* 13 NACCA L.J. 188–89 (1954) ("[t]oday we should be thinking of the death statutes as part of the general law"); *Panama Railroad Co. v. Rock,* 266 U.S. 209, 216, 45 S.Ct. 58, 60, 69 L.Ed. 250 (1924) (Holmes, J., dissenting) (pervasive legislation indicates no public policy bar to common-law cause of action for wrongful death).

The court's opinion can rightly be recorded as one of the most anti-family decisions in recent memory. It says to a wife who has lost a husband, to a child who has lost its parents, to the parents whose lives have been torn apart by the death of a child, your rights are denied; the merits of your claim against a hidden killer will never be considered by a Texas judge and jury.[19]

The goose is fattened and the table set, compliments of today's opinion. Pull up a chair, tortfeasors, and dine on pâté de foie gras. You have been absolved from the infliction of lethal wounds, at least in the forum of the Texas courts. I dissent.

RAY and MAUZY, JJ., join in this dissent.

---

**19.** We have not been asked by the Fifth Circuit to answer in this case the question of whether the statute of limitations for wrongful death, interpreted to bar application of the discovery rule, conflicts with our state constitutional due process provision, article I, section 19 of the Texas Constitution. This court in *Nelson v. Krusen,* while recognizing that the due process and "open courts" provision are not coterminous, specifically left that question unanswered. *Nel-*

*son,* 678 S.W.2d at 921. Another unexplored question is whether the legislative distinction between the quick and the dead passes muster under article I, section 3 of the Texas Constitution, our state guarantee of equal protection, or the federal equivalent, U.S. Const. amend. XIV, § 1.